IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>CITY OF ERIE, PENNSYLVANIA,<br><br>        Defendant. | Civil Action No. 04-4   Erie<br><br>JUDGE McLAUGHLIN |

**PLAINTIFF UNITED STATES' MEMORANDUM IN RESPONSE TO
OBJECTIONS AND IN SUPPORT OF FINAL ENTRY OF CONSENT DECREE**

## I.    INTRODUCTION

Pursuant to Paragraph 46 of the Consent Decree, plaintiff United States of America

("United States") submits this memorandum in response to objections to the Decree. As

demonstrated below, none of the objections has merit. Accordingly, the Court should determine

that the Consent Decree is lawful, fair, reasonable, adequate and consistent with the public

interest, and enter the Decree in settlement of all the United States' claims against defendant City

of Erie, Pennsylvania (the "City").

## II.    BACKGROUND

The United States brought this action pursuant to Section 707 of Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e-6. The United States alleged that the City

had violated Title VII since at least 1996 by using a particular physical agility test (the "PAT") to

screen applicants for employment as entry-level police officers. Specifically, the United States

alleged that the City's use of the PAT disproportionately excluded female applicants from

consideration for hire into the entry-level police officer position and was not "job related for

[that] position" and "consistent with business necessity." 42 U.S.C. §2000e-2(k)(1)(A)(i).

The Court bifurcated proceedings into two phases, a liability phase and a relief phase. On October 8, 2004, the Court granted partial summary judgment for the United States, finding that the City's use of the PAT caused a disparate impact against female applicants. A bench trial regarding the remaining liability issues was held on March 7-10, 2005. On December 13, 2005, the Court issued Findings of Fact and Conclusions of Law, in which the Court determined that the City had failed to prove that its use of the PAT was job related and consistent with business necessity, as required by Title VII. Accordingly, the Court concluded that City's use of the PAT violated Title VII and entered judgment in favor of the United States with respect to the City's liability.

Before embarking on relief phase discovery, the parties engaged in settlement negotiations and ultimately executed a Consent Decree ("Decree"). On March 10, 2006, the Court granted the parties' joint motion for the provisional entry of the Decree, subject to final approval after a hearing to consider objections to the fairness of its terms.

Pursuant to the Consent Decree and in compliance with Section 703(n) of Title VII, 42 U.S.C. §2000e-2(n),[1] the parties sent notice of the Consent Decree and the date on which the

---

[1] Section 703(n)(1)(A) provides:

Notwithstanding any other provision of law . . . an employment practice that implements and is within the scope of a . . . consent judgment or order that resolves a claim of employment discrimination under . . . Federal civil rights laws . . .
. . . may not be challenged in a claim under the Constitution or Federal civil rights laws -
(i) by a person who, prior to entry of [the] judgment or order . . . had (I) actual notice of the proposed judgment or order sufficient to apprise such person that such judgment or order might adversely affect the interests and legal rights of such person and that an opportunity was available to present objections to such judgment or order by a future date certain; and (II) a reasonable opportunity to present objections to such judgment or order;

2

[that] position" and "consistent with business necessity." 42 U.S.C. §2000e-2(k)(1)(A)(i).

The Court bifurcated proceedings into two phases, a liability phase and a relief phase. On October 8, 2004, the Court granted partial summary judgment for the United States, finding that the City's use of the PAT caused a disparate impact against female applicants. A bench trial regarding the remaining liability issues was held on March 7-10, 2005. On December 13, 2005, the Court issued Findings of Fact and Conclusions of Law, in which the Court determined that the City had failed to prove that its use of the PAT was job related and consistent with business necessity, as required by Title VII. Accordingly, the Court concluded that City's use of the PAT violated Title VII and entered judgment in favor of the United States with respect to the City's liability.

Before embarking on relief phase discovery, the parties engaged in settlement negotiations and ultimately executed a Consent Decree. On March 10, 2006, the Court granted the parties' joint motion for the provisional entry of the Decree, subject to final approval after a hearing to consider objections to the fairness of its terms.

Pursuant to the Consent Decree and in compliance with Section 703(n) of Title VII, 42 U.S.C. §2000e-2(n),[1] the parties sent notice of the Consent Decree and the date on which the

---

[1] Section 703(n)(1)(A) provides:

Notwithstanding any other provision of law . . . an employment practice that implements and is within the scope of a . . . consent judgment or order that resolves a claim of employment discrimination under . . . Federal civil rights laws . . .
. . . may not be challenged in a claim under the Constitution or Federal civil rights laws -
(i) by a person who, prior to entry of [the] judgment or order . . . had (I) actual notice of the proposed judgment or order sufficient to apprise such person that such judgment or order might adversely affect the interests and legal rights of such person and that an opportunity was available to present objections to such judgment or order by a future date certain; and (II) a reasonable opportunity to present objections to such judgment or order;

fairness hearing would be held, along with instructions for filing objections, to the last known addresses of all potential claimants listed on Appendix A to the Decree and to incumbent City of Erie police officers. See Decree, ¶ 44; Exhibit 1 (all Exhibits are contained in the Appendix filed with this Memorandum).[2] In addition, notice of the Decree and hearing was published in the Erie Times-News. See Consent Decree, ¶ 45. To date, the United States has received objections to entry of the Consent Decree from fifty-five incumbent officers.[3] The United States also has received Objection forms from three potential claimants listed on Appendix A to the Consent Decree and three other individuals or organizations. A total of nineteen of the objectors (fourteen incumbent officers, two potential claimants and three others) have requested an opportunity to be heard at the fairness hearing on June 15, 2006.

As established in this memorandum, none of the objections has merit; and the Court should give final approval to, and enter, the Decree, because it is lawful, fair, reasonable, adequate and consistent with the public interest.

---

or
(ii) by a person whose interests were adequately represented by another person who had previously challenged the judgment or order on the same legal grounds and with a similar factual situation, unless there has been an intervening change of law or fact.

[2] Because an incorrect 1-800 telephone number was originally provided to the City as the number potential objectors could call to request information from the United States, the initial mailing of the notice included that incorrect number. On April 24, 2006, the United States therefore made a second mailing providing the correct number. Similarly, because the City's initial newspaper notice included the incorrect number, the United States paid for publication of a corrected newspaper notice. The incorrect newspaper notice was published on one occasion, April 19, 2006. A corrected notice was published on six days, April 21, 23, 24, 26, 28 and 30, 2006. A copy of the original mailed and newspaper notices, as well as the corrected notices, are attached to this memorandum as Exhibits 2-5.

[3] One incumbent, James Pietras, submitted two nearly identical objection forms.

### III.   STANDARDS FOR APPROVAL OF A TITLE VII CONSENT DECREE

"In enacting Title VII, Congress expressed a strong preference for encouraging voluntary settlement of employment discrimination claims." Carson v. American Brands, Inc., 450 U.S. 79, 88 n.14 (1981).  See also United States v. City of Miami, 614 F.2d 1322, 1331 (5th Cir. 1980)(Congress placed an "extremely high premium on voluntary settlements of Title VII suits"), modified, 664 F.2d 435 (5th Cir. 1981).  Thus, it has long been recognized that cooperation and voluntary compliance are the preferred means of achieving Title VII's goals of ensuring equal employment opportunities and eliminating unlawful employment practices.  See Local 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 515-16 (1986)(citing Alexander v. Gardner-Denver Co., 415 U.S. 36, 44 (1974)).  Accordingly, in considering whether to enter the Consent Decree, the Court should "have a deferential attitude towards" the parties' agreement embodied in the Decree.  United States v. New Jersey, 1995 WL 1943013, *10 (D.N.J. 1995). Moreover, a negotiated settlement in a lawsuit in which the plaintiff is an agency of the federal government "carries with it [a] presumption of validity that is overcome only if the decree contains provisions which are unreasonable, illegal, unconstitutional, or against public policy." Id. at *11 (quoting United States v. City of Alexandria, 614 F.2d 1358, 1362 (5th Cir. 1980)). Thus, the Court should approve the Consent Decree if it is lawful, fair, reasonable, adequate, and consistent with the public interest.  See id. *10-*11; Bailey v. Great Lakes Canning, Inc., 908 F.2d 38, 42 (6th Cir. 1990)(Rule 23 class action under Title VII and § 1981); United States v. North Carolina, 180 F.3d 574, 581 (4th Cir. 1999)(Title VII pattern or practice case); Walsh v. Great Atlantic & Pacific Tea Co., 726 F.2d 956, 965 (3d Cir. 1983)(Rule 23 class action); United States v. Rohm & Haas Co., 721 F. Supp. 666, 680 (D.N.J. 1989)(CERCLA case).

4

IV.    **THE CONSENT DECREE PROVIDES RELIEF THAT IS LAWFUL AND APPROPRIATE UNDER APPLICABLE TITLE VII STANDARDS AND IS FAIR, ADEQUATE, REASONABLE AND CONSISTENT WITH THE PUBLIC INTEREST**

Once it has determined that an employer has violated Title VII, a district court has "not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." Albemarle Paper Co. v. Moody, 422 U.S. 405, 418 (1975)(citation omitted). As stated above, the Court already has determined that the City's use of the PAT had an unlawful disparate impact against female applicants between 1996 and 2002. The proposed Consent Decree attempts, to the extent possible, to make whole those persons who have been harmed by the City's use of the PAT and provides the relief necessary to ensure that the City complies with Title VII in the future.

A.    Prospective Injunctive Relief

When an employer has engaged in a pattern or practice that violates Title VII, an award of prospective injunctive relief is justified. International B'hd of Teamsters v. United States, 431 U.S. 324, 361 (1977). The injunctive provisions of the Consent Decree in this case bar the City from using the PAT in the selection of entry-level police officers. Decree, ¶ 13. In addition, the Decree prohibits the City from using any other physical ability test that would violate Title VII. Decree, ¶ 14. To that end, the Decree requires that the City obtain the agreement of the United States or the approval of the Court if the City wishes to use any physical ability test to screen or select entry-level police officers other than the test used to determine eligibility for entry into the police academy. Decree, ¶¶ 15 and 16. Thus, the injunctive relief provisions of the Consent Decree appropriately prohibit the City from using the unlawful PAT, allow the City to continue

5

using the test applicants must pass to enter the police academy, and allow the City to develop or

adopt a new, lawful physical ability test in the future if it so chooses.

       B.    <u>Individual Remedial Relief</u>

In enacting Title VII, "Congress took care to arm the courts with full equitable powers"

so that the courts can fashion broad relief for individuals harmed by unlawful employment

practices. <u>Albemarle</u>, 422 U.S. at 418. The range of relief a court may order in exercising these

equitable powers "include[s], but is not limited to, reinstatement or hiring of employees, with or

without back pay . . . or any other equitable relief as the court deems appropriate." <u>Franks v.</u>

<u>Bowman Transportation Co.</u>, 424 U.S. 747, 763 (1976)(quoting Section 706(g) of Title VII, 42

U.S.C. § 2000e-5(g)). The guiding principle is that "[t]he injured party is to be placed, as near as

may be, in the situation he would have occupied if the wrong had not been committed."

<u>Albemarle</u>, 422 U.S. at 418-19 (citation omitted). In light of this principle, the individual relief

provided for in the Consent Decree is lawful and appropriate. Under the Decree, only women

who were screened out of the City's police officer selection process solely because they failed the

PAT are potentially eligible for relief. Decree, ¶ 18. Thus, only identified victims of

discrimination will have an opportunity under the Decree to qualify for an award of monetary

relief or priority hiring relief. Decree, ¶¶ 18, 47-49.

       1.    <u>Monetary Relief</u>

Under the Decree, the City will provide a total of $170,000 in four installments to be

distributed to eligible claimants. Decree, ¶¶ 20-24. This total amount is based on the hiring

shortfall resulting from the City's unlawful use of the PAT. The hiring shortfall is a statistical

estimate of how many of the women who failed the PAT during the relevant period would have

been hired if the City had not unlawfully used the PAT.  See, e.g., EEOC v. Chicago Miniature Lamp Works, 640 F. Supp. 1291, 1298-1300 (N.D. Ill. 1986)(hiring shortfall is the number of protected class members the defendant would have been expected to hire absent discrimination, minus the actual number of hires); State of New Jersey, 1995 WL 1943013 at *5 (explaining calculation of hiring shortfall); Bailey, 908 F.2d at 41-42 (shortfall method used in class action settlement).  The United States estimated that the City would have hired seven to ten more female police officers but for its unlawful use of the PAT, while the City believed it would have hired no more than three more women.  The amount of monetary relief was based on a compromise shortfall of five additional hires.

2.    <u>Remedial Hiring Relief</u>

Based on the same compromise hiring shortfall, the Consent Decree provides that the City will hire up to five qualified claimants for the police officer position before hiring any other new entry-level police officers.  Decree, ¶¶ 31 and 32.[4]  Only persons who were otherwise qualified for hire at the time they failed the PAT <u>and</u> presently qualify for the position will be eligible to receive priority hiring relief.  Decree, ¶¶33, 39 and 55.  The City will have an opportunity to challenge the qualifications of any hiring relief claimant, and the Court will make the final determination regarding any individual's eligibility for hiring relief.  Decree, ¶¶ 39 and 55.  Thus, the Decree does not require that the City hire any unqualified individual.  Indeed, the Consent Decree, by requiring only that the City make "up to" five priority hires, acknowledges that it is possible that fewer than five claimants who express an interest in hiring relief will be

---

[4]  The Decree does not require that the City make any priority hires until it has recalled all officers who were laid off as a result of the City's recent budget difficulties.  Decree, ¶ 32.

7

found currently qualified and insures that, if that is the case, no unqualified claimants will be hired. Decree, ¶ 31.

### 3.    Retroactive Seniority

Claimants who are hired as priority hires will be awarded retroactive seniority when they complete their probationary period. Decree, ¶ 41. Retroactive seniority ordinarily is necessary to achieve the "make whole" purpose of Title VII by putting victims of employment discrimination in the position they would have occupied but for the discrimination. Franks, 424 U.S. at 764-65. Thus, there is a presumption in favor of such relief when the parties reach a voluntary settlement. See Moore v. City of San Jose, 615 F.2d 1265, 1272 (9th Cir. 1980); Bockman v. Lucky Stores, Inc., 41 FEP Cases 855, 858 (E.D. Cal. 1986), aff'd, 826 F.2d 1069 (9th Cir. 1987). The Consent Decree in this case contains appropriate safeguards to ensure that the award of retroactive seniority will not result in the advancement of any priority hire into a position for which she does not have the necessary on-the-job experience, by providing that retroactive seniority will not be used for purposes of eligibility for promotion or requirements for completion of a probationary period. Decree, ¶10.

In summary, the Consent Decree is fair, reasonable, adequate and consistent with the requirements of Title VII and the public interest. The Decree provides relief necessary to eliminate the unlawful employment practice and ensure future compliance with Title VII. It also attempts to "make whole" identified individuals who were harmed by the unlawful practice, while accommodating the interests of incumbents and the public to the extent possible.

## V.    NONE OF THE OBJECTIONS HAS MERIT

As indicated previously, the United States received objections to, or comments on, the

8

terms of the Consent Decree from sixty-one persons and organizations. However, because the objections received from fifty of the City's incumbent police officers were identical to those submitted by the Fraternal Order of Police No. 7 (the "FOP"), only eleven unique Objection forms were received. Eight of those eleven stated objections, while the remaining three did not object to the terms of the Consent Decree, but asked for an opportunity to be heard at the fairness hearing.[5]

The objections and comments can be categorized as follows:[6] 1) objections to the prosecution of this action by the Department of Justice or to the Court's liability judgment; 2) assertions that it is unfair to award relief to individuals who failed the PAT and not to those who were not hired for other reasons; 3) objections to the monetary relief provisions of the Decree because they do not provide full backpay to the women who actually would have been hired but for the PAT and may provide relief to claimants who would not have been hired absent discrimination; 4) an objection to the hiring relief provisions of the Decree because they provide that claimants cannot be deemed unqualified solely because they are not already certified police officers; 5) objections to the award of retroactive seniority as unfair to incumbent officers; 6) objections to the use of retroactive seniority in any way that would violate the collective bargaining agreement or the state civil service statutes; 7) objections asserting that the use of retroactive seniority will violate incumbents' right to equal protection under the United States

---

[5] The three forms that requested only an opportunity to be heard were submitted by potential claimants Judith Garcia and Zabrina Thompson and by the Police Relief and Pension Association of Erie, Pennsylvania (the "Pension Association").

[6] The objectors whose objections fall into each of the categories listed above are identified in Exhibit 6. In addition, Exhibit 7 lists all objectors and others who requested an opportunity to be heard at the fairness hearing on June 15, 2006.

9

Constitution and the state constitution; 8) an objection to the specific presumptive

hire/retroactive seniority dates listed in Appendix A to the Decree; 9) an objection to the list of

potential claimants attached as Appendix A to the Decree because that it does not include the

objector, who claims she took and failed the PAT during the relevant period; and 10) a comment

by the Pension Association, stating that it would like to obtain formation about how retroactive

seniority awarded to priority hires will be used in connection with the pensions of those

individuals.  None of these objections or comments prevent the Court from entering the Decree.

 A. The Court's Liability Judgment and the Evidence Supporting
   It Provide a Sufficient Predicate for the Consent Decree.

   Some objectors disagree with the Department of Justice's prosecution of this case and the

Court's liability judgment, suggesting that only intentional discrimination or the use of a test that

excludes all women constitutes a violation of Title VII.  Specifically, one of these objectors

asserts that the opportunity to take the test was available to males and females alike.[7]  Another

asserts that the Court's liability judgment was incorrect because not all women who took the

PAT failed it.[8]  A third objector asserts that the PAT was job-related and consistent with business

necessity.[9]  These objections are without merit and should not prevent the Court from entering

the Consent Decree.

   First, the purpose of the fairness hearing is not to re-litigate the Court's liability

judgment.  Rather, it is to allow the Court to determine whether, given that judgment, the

---

[7] Objection of Mark Sanders.

[8] Objection of Robert Hill.

[9] Objection of Mark Sanders.

settlement embodied in the Consent Decree is lawful, fair, reasonable, adequate and consistent with the public interest.

Moreover, to the extent that the objections can be read as asserting that the settlement is unfair or unreasonable because this Court's liability judgment could have been reversed on appeal if the City had chosen to appeal it, the objections provide no support for such an assertion. To the contrary, it has long been acknowledged that Title VII protects not only against intentionally discriminatory employment practices, but also against practices that are "fair in form, but discriminatory in operation." Griggs v. Duke Power, 401 U.S. 424, 431 (1971). As the statute itself has made clear since it was amended in 1991, a prima facie violation of Title VII is established when the plaintiff shows that an employment practice that is applied neutrally to all applicants operates to disproportionately disfavor a protected group - even if it does not totally exclude that group. 42 U.S.C. §2000e-2(k)(1)(A)(i). Based on undisputed facts regarding the percentages of male and female applicants who failed the PAT, this Court correctly concluded that the City's use of the PAT did disproportionately exclude female applicants.

It was then up to the City to prove that its use of the PAT, with a 90-second cutoff, as a pass/fail screening device was job related and consistent with business necessity. 42 U.S.C. §2000e-2(k)(1)(A)(i). After hearing the evidence presented at trial, including the testimony of parties' experts, the Chief of Police and a number of incumbent police officers, the Court found that the City had not made such a showing and, therefore, that the City's use of the PAT violated Title VII. Findings of Fact and Conclusions of Law, ¶ 305. The Court's liability judgment is throughly supported by the Court's extensive Findings of Fact and Conclusions of Law, and the likelihood of reversal on appeal is minimal.

11

B.    The Consent Decree Appropriately Limits
      Individual Relief to Victims of the City's Use of the PAT.

Some objectors suggest that it is unfair to award relief to individuals who failed the PAT and not to individuals who were not hired for other reasons, such as their scores on the written examination used by the City.[10]  However, aside from the PAT, none of the other employment practices used by the City was alleged by the United States or found by the Court to violate Title VII.  Therefore, the group of individuals potentially entitled to relief under the Decree appropriately is limited to those harmed by the employment practice alleged and found to be unlawful.

C.    The Total Amount of Monetary Relief Is Appropriate, and It is Fair and
      Reasonable to Award a Share of the Monetary Relief to All Eligible Claimants.

One objector, a potential claimant, suggests that the amount of monetary relief available under the Decree, which will be shared by all eligible claimants, is insufficient because that amount it is less than the full amount she would have earned if she had been hired, and she is certain that she would have been hired if she had passed the PAT.[11]  Similarly, some objectors suggest that it is unfair to make all women who failed the PAT eligible for relief under the Decree, because they would not necessarily have been hired even if they had passed it.[12]  These objections are without merit given the practical impossibility of determining which of the potential claimants would have been hired if they had passed the PAT.

When it is not possible to determine with reasonable certainty which claimants would

[10]  Objections of Robert Hill and Daniel Spizarny.

[11]  Objection of Linda (Peters) Wolcott.

[12]  Objections of Melanie Szoszorek and Mark Sanders.

12

have been hired absent the use of an unlawful test, it is appropriate to calculate monetary relief using a shortfall method. See Chicago Miniature, 640 F. Supp. at 1298-1300 ("it cannot be said with certainty which individual claimants would have been hired," and attempting to make such a determination would drag the court into a "'quagmire' of guesswork"). As discussed above, the total amount of monetary relief ($170,000) was based on the hiring shortfall, a statistical estimate of the number of additional women who would have been hired from the 1996-2002 eligibility lists had the City not used the discriminatory PAT. This statistical estimate takes into account the fact that not all women who failed the PAT during those years would have passed all of the other steps in the selection process. It also takes into account the effect of veterans preference points on the expected number of women hired.

As stated previously, the parties used a compromise hiring shortfall of five in negotiating the total amount of monetary relief to be awarded under the Consent Decree. Specifically, the $170,000 amount is based on an estimate of the amount that would have been earned by five entry-level police officers if they had been hired from the 1996-2002 eligibility lists, less an estimate of the amount they would have earned in mitigation. Title VII provides that any amounts that were earned in mitigation or that could have been earned using reasonable diligence should be subtracted from the amount of back pay to be awarded to victims of discrimination. 42 U.S.C. § 2000e-5(g)(1); Booker v. Taylor Milk Co., 64 F.3d 860, 864 (3d Cir. 1995). Thus, even if we were certain that an individual claimant would have been hired and earned $30,000 per year in salary and benefits as an Erie police officer had she passed the PAT, if she instead earned $25,000 per year in another job, she would be entitled to recover the difference ($5,000), rather than the full $30,000, per year. Thus, the total amount of monetary relief available under the

13

Decree, $170,000 – or an average of $34,000 for each of the five shortfall positions -- is reasonable and adequate.[13]

It also is fair that the total of $170,000 in monetary relief will be divided among all eligible claimants.[14] If it were possible to determine with certainty whether a particular applicant who failed the PAT would have passed all of the other steps in the City's selection process and been hired, then only those applicants who would have been hired should be eligible for monetary relief. However, it is not possible now - up to ten years after the fact – to make such a determination, because the City did not allow applicants who failed the PAT to continue in the selection process. In these circumstances, it is appropriate that the amount of monetary relief available under the Decree be shared by all victims of the City's unlawful use of the PAT. This is the "best that can be done under the circumstances," even though, because there likely will be many more eligible claimants than the estimated hiring shortfall of five, each eligible claimant will receive substantially less than the full value of the police officer job she might have obtained but for the City's use of the PAT. Chicago Miniature, 640 F. Supp. at 1298-1300 (pro rata shares appropriate). See also EEC v. Andrew Corp., 1990 WL 92820 (N.D. Ill. 1990)(because of difficulty or impossibility of determining which applicants would have been hired, claimants may

---

[13] Compensatory and punitive damages are not available in a disparate impact case brought under Section 707 of Title VII, 42 U.S.C. § 2000e-6. Thus, Section 1981a provides that compensatory and punitive damages may be available in "an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact)." 42 U.S.C. § 1981a(1)(Emphases added).

[14] Each claimant's share of the total amount of monetary relief will be determined after the Decree is entered and the potential claimants have been given an opportunity to make a claim for monetary and/or hiring relief. Decree, ¶¶ 47-49. Objections to the shares allotted to each claimant will be considered by the Court at a second fairness hearing. Decree, ¶¶ 50-55.

14

be required to accept a pro-rata share).

Further, in evaluating the amount of the monetary relief available under the Consent Decree, the Court must keep in mind that the "United States' decision to settle its claims through [a] consent decree cannot be evaluated solely in terms of the remedies that it provides to [individual victims of discrimination] . . . but rather, must be considered in light of the public policy of eradicating noncompliance with Title VII and furthering its purpose of providing equal employment opportunity." State of New Jersey, 1995 WL 1943013 at *10. Thus, the dissatisfaction of one potential claimant with the relief available to her should not prevent the Court from approving the Consent Decree where, as in this case, given all of the relevant circumstances, including the defendant's financial condition and the cost to both parties of a litigated relief phase,[15] the settlement is fair, reasonable and adequate. Id. at * 10.

D.     The Consent Decree Does Not Require the Hiring of Unqualified Claimants.

With regard to the hiring relief provisions of the Consent Decree, one objector suggests that those provisions may result in hiring unqualified individuals because claimants otherwise eligible for hiring relief will not be deemed currently unqualified under the Decree solely because they do not already have Act 120 certification.[16] See Decree, ¶ 33. In fact, however, the Consent Decree does not require that the City hire any unqualified claimant.

_____

[15] It is appropriate for the Court to consider, among other things, not only "the range of reasonableness of the settlement fund in light of the best possible recovery" but also "the ability of the defendant[] to withstand a greater judgment." Id. at *11 (quoting Girth v. Epson, 521 F.2d 153, 157 (3d Cir. 1975)). In addition, it is appropriate to consider the fact that, absent settlement, a "second set of hearings on individual damages would have substantially added to the duration and expense incurred by the parties in resolving this litigation." Id. at *14.

[16] Objection of Mark Sanders.

15

The Decree appropriately prohibits the City from applying the prior certification requirement to claimants because the requirement was not applied to applicants hired from the 1996-2002 eligibility lists at issue in this case. The mere fact that the Decree does not allow the City to deem a claimant unqualified solely because she has not previously been certified does not indicate that the claimant is unqualified to be a police officer. Indeed, the City only began requiring prior certification in 2004. It did not require prior certification of the numerous qualified incumbent Erie police officers (likely including the objector himself) hired before then. Moreover, under the Decree, the City may determine that a claimant is currently unqualified and, therefore, not entitled to hiring relief, if the claimant fails the MPOETC physical ability test used to determine whether an individual will be allowed to enter the police academy. See Decree, ¶¶ 33(b) and 15. The City also may determine that a claimant is currently unqualified using any other lawful, objective hiring criteria used by the City to evaluate applicants' qualifications. Decree, ¶ 33(c). Finally, claimants hired by the City under the Decree, like other applicants hired from the 1996-2002 eligibility lists, will be required to successfully complete the police academy and become certified law enforcement officers once they are hired.

    E.    <u>The Award of Retroactive Seniority Is a Necessary Component of "Make Whole"<br>Relief and Is Designed to Have the Minimum Possible Effect on Incumbents.</u>

A number of objections relate to the award of retroactive seniority to claimants hired as priority hires. Some objectors contend that such relief is inappropriate because it disadvantages innocent incumbent officers.[17] These contentions are without merit.

First, some of the City's incumbent officers likely were hired prior to 1997 (the earliest

---

[17] Objections of FOP Objectors and Thomas Borreli.

16

possible retroactive seniority date under the Decree) and, therefore, will continue to have more seniority than any individual hired under the Decree.[18] Moreover, some incumbents hired since 1997 in fact may have been advantaged by the City's unlawful use of the PAT, since they may not have been hired (or may have been hired later) if the claimants had passed the PAT and been hired instead. In such circumstances, the award of retroactive seniority simply eliminates an advantage the incumbent never would have had but for the City's unlawful use of the PAT.

Still, it is possible that awarding retroactive seniority may place some incumbents lower in the seniority ranks than they would have been had the City never used the PAT. However, as the Supreme Court held, retroactive seniority may not "be denied merely because the interests of other employees may be thereby affected," because:

> [D]enial of seniority relief to identifiable victims of racial discrimination on the sole ground that such relief diminishes the expectations of other, arguably innocent, employees would if applied generally frustrate the central "make whole" objective of Title VII. These conflicting interests of other employees will, of course, always be present in instances where some scarce employment benefit is distributed among employees on the basis of their status in the seniority hierarchy.

Franks, 424 U.S. at 774-75 (footnotes omitted). Thus, the courts repeatedly have upheld awards of seniority relief as an appropriate remedy in Title VII cases. See State of New Jersey, 1995 WL 1943013 at *20 (and cases cited therein).

That is not to say that the impact of such relief on incumbents is irrelevant to the Court's decision whether to approve the Consent Decree. Id. at *19. "When evaluating whether

---

[18]  None of the objectors has shown that he/she will be affected by any award of retroactive seniority under the Decree. However, based on materials produced by the City during discovery and in settlement negotiations, the United States has identified thirty objectors who appear to have hire dates after the earliest possible retroactive seniority date. See Exhibits 8-10. Of course, only claimants who took the PAT in 1996 would receive that seniority date if they are hired and successfully complete their probationary period.

proposed seniority relief is fair and workable, courts have considered . . . the number of victims of unlawful discrimination, the size of the incumbent workforce that will be affected, and the impact that granting seniority relief would have on the incumbent workforce." Id. at *20. Here, no more than five qualified claimants will receive hiring relief, including retroactive seniority. In comparison, there are approximately 200 sworn officers in the Erie police department. Findings of Fact and Conclusions of Law, ¶ 46. Moreover, as stated previously, the earliest possible retroactive seniority date is in 1997.[19] In addition, the Decree specifically provides that retroactive seniority awarded under the Decree will not be used for "consideration or eligibility for promotion," Decree, ¶ 10, so the retroactive seniority awarded to claimants should have little affect on the promotional opportunities of any incumbents. To the extent that retroactive seniority awarded under the Decree nonetheless might affect some incumbents' future "advancement" within the police department as one objector suggests,[20] it is unlikely that the addition of no more than five qualified claimants as priority hires with retroactive seniority will have a significant effect. In summary, the expectations of those incumbents who may be affected are disrupted only to the limited extent necessary to attempt to "make whole" qualified victims of discrimination.

---

[19] In fact, it is likely that the more recently the potential claimants applied, the more likely they will be now to request hiring relief.

[20] The objector, Thomas Borreli, does not specify his own seniority date or the manner in which his advancement might be affected. The collective bargaining agreement provided to the United States by the City during settlement negotiations indicates that seniority governs "intra-departmental transfers" where "the physical fitness, ability and efficiency to perform the job is equal." See Exhibit 11 (Collective bargaining agreement, page R1).

F.   The Collective Bargaining Agreement and State Civil Service Laws Do
     Not Prevent the Use of Retroactive Seniority Awarded under the Decree.

1.   The Collective Bargaining Agreement

The FOP and numerous incumbents assert that the application of retroactive seniority for

purposes of anything other than wage rates will violate the collective bargaining agreement

between the City and the FOP.  The Supreme Court has held, however, that once there has been a

finding of discrimination by an employer, an award of retroactive seniority is appropriate even if

it would violate a collective bargaining agreement between the employer and an innocent union.

Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 400 (1982).  See also Independent Federation

of Flight Attendants v. Zipes, 491 U.S. 754, 757 (1989)(Zipes v. TWA held reinstatement with

"full competitive seniority" appropriate, even though it would violate a collective bargaining

agreement); General Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 404-405

(1982)(O'Connor, concurring)( Zipes held that Title VII authorizes a court "to order retroactive

seniority relief over the objections of a union that was not guilty of discrimination").

2.   State Civil Service Law

The FOP objectors also assert that the use of retroactive seniority will violate state civil

service statutes.  But state statutes cannot prevent the award of retroactive seniority to victims of

discrimination.  See Kirkland v. New York State Dept. of Correctional Serv., 711 F.2d 1117,

1132 n.18 (2d Cir.1983)(court did not consider whether settlement agreement violated state law

"[b]ecause state law must yield to federal law in Title VII cases"), cert. denied, 465 U.S. 1005

(1984).  Under the Supremacy Clause of the United States Constitution, federal law supercedes

state statutes.  Thus, any state civil service law that conflicts with Title VII or "stands as an

obstacle to the accomplishments of the full purposes and objectives of Congress" is void.

Lawrence County v. Lead-Deadwood School Dist., 469 U.S. 256, 260 (1985)(citation omitted).

Accordingly, the courts regularly have held that civil service rules may be violated to effectuate

the purposes of Title VII through a consent decree.  See, e.g., Sarabia v. Toledo Police

Patrolman's Ass'n, 601 F.2d 914, 918 (6th Cir. 1979)(court may suspend civil service rule that

would prevent achievement of stated goal of consent decree); Vulcan Pioneers, Inc. v. New

Jersey Dept. of Civil Service, 588 F. Supp. 727, 731 n. 4 (D. N.J. 1984)("state laws must fall

when they hinder the effectuation of" consent decrees); City & County of San Francisco v. San

Francisco Police Officers Ass'n, 621 F. Supp. 1221, 1223 (N.D. Cal.1985)

(Supremacy Clause, Title VII and consent decree authorized violation of civil service rule).

> G.    The Use of Retroactive Seniority Awarded under the Decree
>        Does Not Violate Constitutional Equal Protection Guarantees.

The FOP objectors' assertion that the use of retroactive seniority will violate incumbents'

rights to equal protection under the United States Constitution and the Pennsylvania

constitution,[21] also is without merit.  Given the Court's determination that the City's use of the

PAT unlawfully discriminated against female applicants on the basis of their gender, there is no

doubt that the award of retroactive seniority under the Decree is constitutional.

---

[21] The Fourteenth Amendment to the United States Constitution provides, in pertinent part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV, § 1. Pennsylvania's equal protection provision states: "[N]either the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." Pa. Const. art. I, § 26.  "The equal protection provisions of the Pennsylvania Constitution are analyzed . . . under the same standards used by the United States Supreme Court when reviewing equal protection claims under the Fourteenth Amendment." Philadelphia Fraternal Order of Correctional Officers v. Rendell, 1997 WL 1161146, *6 (3d Cir. 1997)(citations omitted).

Assuming that the Consent Decree establishes a gender-based classification for constitutional purposes,[22] "[u]nder familiar equal protection doctrine, the level of scrutiny that a court must [give to a classification] depends on the nature of the classification at issue." Pemberthy v. Beyer, 19 F.3d 857, 871 n.18 (3d Cir. 1994). Classifications based on race or national origin are given "strict scrutiny," while classifications based on sex traditionally have been subject to "intermediate" or "heightened" scrutiny. Id. To pass strict scrutiny, a race-based classification must be "narrowly tailored to serve a compelling state interest." Id. A classification based on sex passes constitutional muster if it is "substantially related" to the achievement of "important governmental objectives." Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256, 272-73 (1979); Pemberthy, 19 F.3d at 871 n.18. The Supreme Court also has said that a classification that prefers one gender over another "would require an exceedingly persuasive justification to withstand a constitutional challenge under the Equal Protection Clause." Feeney, 442 U.S. at 273. See also, United States v. Virginia, 518 U.S. 515, 531-34 (1996)(applying "exceedingly persuasive" standard in context of public education). Regardless of the exact formulation, it is clear that a sex-based classification is constitutional if it can survive the most stringent level of scrutiny - the strict scrutiny given to racial classifications.

There can be no question that public employers have a compelling interest in remedying past discrimination. To satisfy the "compelling interest" prong of strict scrutiny, there must be

---

[22] Arguably, the Consent Decree does not contain a gender-based classification at all. The Decree contains no "affirmative action" provisions; the individual relief provided is limited to identified victims of discrimination. See State of New Jersey, 1995 WL 1943013 at * 18. Such relief is "indisputably appropriate to remedy past discrimination." Id. at *17 (citing Wygant v. Jackson Board of Education, 476 U.S. 267, 277 (1986); Franks, 424 U.S. at 775 and n.35; and EEC v. AT & T, 556 F.2d 167, 179 (3d Cir. 1977).

21

"'sufficient evidence to justify the conclusion that there has been prior discrimination.'" State of New Jersey, 1995 WL 1943013 at *18 (quoting Wygant, 476 U.S. at 277). Evidence that is sufficient to establish "a prima facie case if a constitutional or statutory violation" is sufficient to establish a "compelling interest." Id. (quoting Shuford v. Alabama Board of Education, 846 F. Supp. 1511, 1521 (M.D.Ala.1994) (citing Richmond v. J.A. Croson Co., 488 U.S. 469, 500 (1989)). Clearly, this Court's liability judgment provides a sufficient "compelling interest" to support gender-conscious relief.

Moreover, the priority hiring provisions of the Decree, including the retroactive seniority provisions, are narrowly tailored to serve the City's and the United States' interests in remedying the City's past unlawful discrimination because hiring relief is limited to identifiable victims of that discrimination. See id. at *16-*17. Indeed, only identified victims of the City's discriminatory employment practices are eligible to receive any monetary or hiring relief under the Decree. Decree ¶ 18; Cf. Connecticut v. Teal, 457 U.S. 440, 448 (1982)(indicating that all women who fail a test with an unlawful disparate impact are victims of discrimination because they have been deprived of an employment "opportunity"). Moreover, only victims who were otherwise qualified at the time they failed the PAT and are currently qualified to be Erie police officers are entitled to hiring relief. Decree ¶¶ 33, 55. In addition, as discussed above, the Decree disrupts incumbents' seniority rights only to the limited extent necessary to place qualified victims as nearly as possible into the positions they would have held but for the discrimination. Thus, because the hiring relief provisions of the Decree are narrowly tailored to serve a compelling government interest, they do not violate incumbents' equal protection rights under either the federal or the state constitution.

22

H.     The Presumptive Hire Dates Are Appropriate.

One incumbent objects to the presumptive hire dates listed in Appendix A to the Consent Decree.[23]  The presumptive hire date listed for each potential claimant is the earliest date of hire of any applicant who took and passed the PAT when the potential claimant failed the PAT.  This date will be used as the retroactive seniority date of the potential claimant if she is hired as a priority hire under the Decree and successfully completes her probationary period.  Decree, ¶ 41.

As the objector asserts, because the City used each of its police officer eligibility lists for two years, it is possible that an individual hired under the Decree may be awarded a retroactive seniority date earlier than the date on which she actually would have been hired from the eligibility list.  The parties have agreed to these dates because it is impossible to determine precisely when any given claimant would have been hired had she passed the PAT.  Given all the circumstances, including the small number of priority hires that may be made, the limitations put on the use of retroactive seniority under the Decree, and the fact that, as discussed above, the claimants most likely to be hired are those who will receive the least retroactive seniority, the retroactive seniority dates are fair and reasonable.

I.     If Ethel Easter Establishes that She Failed the PAT in 1996,
       She Should Be Added as an Eligible Claimant.

One objector, Ethel Easter, claims that she should be entitled to relief under the Consent Decree because she took and failed the PAT between 1996 and 2002.  The Decree states that all individuals eligible for relief are listed on Appendix A to the Decree.  Decree, ¶ 18.  Appendix A was compiled from the City's existing records of who took and failed the PAT during the

---

[23]  Objection of Melanie Szoszorek.

23

relevant years. Ms. Easter's name does not appear on the records produced by the City.[24] To the extent that Ms. Easter nonetheless establishes at the fairness hearing (or the City confirms) that she took and failed the PAT during one of the administrations between 1996 and 2002 as she claims, the United States agrees that her name should be added to Appendix A with the appropriate presumptive hire date (i.e., the presumptive hire date of the other claimants from the same administration of the PAT), and that she should thereafter be allowed to make a claim for individual relief and otherwise be treated as an individual eligible for relief under the Decree.

J.      The Decree Should Have No Effect on Pension Benefits.

Finally, the Pension Association filed an Objection form indicating that it wants to appear at the fairness hearing to obtain information about how the retroactive seniority awarded under the Decree will affect the pensions of individuals hired as priority hires. The Consent Decree specifically provides that retroactive seniority awarded under Decree is not to be used as seniority "for purposes of pension benefits." Decree, ¶ 10. Given that retroactive seniority awarded under the Decree is wholly a "creature of the Decree" – i.e., has no meaning other than as defined in the Decree - it should have no effect on the pensions of individuals hired as priority hires. Under the Decree, such individuals may be treated, for purposes of pension benefits, as if they begin accruing seniority on the date on which they actually are hired by the City.

---

[24] During discovery, the United States had compiled a computerized master list of applicants who took the PAT for each administration between 1996 and 2002. See Exhibit 12. All available records maintained by the City and produced during discovery were used to identify applicants who took the PAT. For most years, this included some form of computerized applicant tracking records as well as eligibility lists and application files. While the City did not maintain computerized applicant tracking records or paper application files from the 1996 selection process, it did produce during discovery a handwritten applicant tracking list for that year. That list, which is attached as Exhibit 13, was used to compile the 1996 master list.

## VI.     CONCLUSION

For the foregoing reasons, this Court should find that none of the objections raised

prevents the Court from finding that the terms of the Consent Decree are lawful, fair, reasonable,

adequate, and consistent with the public interest.  Accordingly, the Court should enter the

Consent Decree (as executed by the parties or, to the extent that the Court finds that Ms. Easter

failed the PAT between 1996 and 2002, with Appendix A amended to include her name and

presumptive hire date) as a final resolution of the claims asserted by the United States against the

City of Erie.

Respectfully submitted,

On behalf of plaintiff United States:

SHARON A. SEELEY
Trial Attorney
U.S. Department of Justice
Civil Rights Division
Employment Litigation Section
950 Pennsylvania Avenue, N.W.
Patrick Henry Building, Room 4908
Washington, D.C.  20530
Telephone: (202) 514-4761
Facsimile: (202) 514-1005

s/Jessica Lieber Smolar
JESSICA LIEBER SMOLAR
Assistant United States Attorney
U.S. Post Office and Courthouse
700 Grant Street, Suite 400
Pittsburgh, PA 15219
Telephone: (412) 894-7419
PA ID No.: 65406

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of June, 2006, a true and correct copy of the Appendix to Plaintiff United States' Memorandum in Response to Objections and in Support of Final Entry of Consent Decree was served by overnight delivery to the following counsel of record:

> Mr. Gerald J. Villella, Esq.
> Office of the City Solicitor
> 626 State Street, Room 505
> Erie, Pennsylvania 16501
> Facsimile: (814) 455-9438

> Sharon Seeley
> Trial Attorney
> U.S. Department of Justice