# AMERICAN ARBITRATION ASSOCIATION

|  |  |  |
|---|---|---|
| In the Matter of the Arbitration Between | ) | |
| | ) | |
| CITY OF ERIE, | ) | |
| | ) | |
| And | ) | Act 111 Interest Arbitration |
| | ) | |
| HAAS MEMORIAL LODGE NO. 7 | ) | |
| FRATERNAL ORDER OF POLICE | ) | |
| | ) | |
| AAA CASE NO. 55 360 L 0376 04 | ) | |
| January 1, 2006 – December 31, 2008 | ) | |

I.  PERTINENT PROVISIONS OF THE COLLECTIVE BARGAINING AGREEMENT WHICH ARE ADVERSLY AFFECTED BY THE CONSENT DECREE ENTERED INTO BETWEEN THE UNITED STATES AND THE CITY OF ERIE ON MARCH 10, 2006.

   A. **Article IV A(2), Hours of Work**: All officers shall be required to rotate shifts. In most cases, officers will not be required to work one shift for more than one (1) month without their consent. The Chief of Police may assign officers to a shift for periods of more than one (1) month on an as needed basis, provided he first requests volunteers to perform the work. If there are no volunteers or is an insufficient number of qualified volunteers are available, the Chief may assign a qualified officer or officers to perform the duty in _reverse order of seniority_ (emphasis added).

   B. **Article VI C(1), Vacations, Choice of Vacation Periods**: Vacations shall be selected by _seniority_ by unit and may be taken at one time or broken down into any combination of periods with a minimum time period of one (1) week (emphasis added).

   C. **Article VI D(2), Vacations, Scheduling of Vacations**: By November 1st of the year proceeding the year that vacations are to be taken, a sign up sheet shall be posted and vacations shall be picked by _seniority_, with all vacations picked by December 31st of that year (emphasis added).

   D. **Article VII A(3)c, Light Duty Policy for City of Erie Police Officers**: In the event that more than one police officer becomes eligible for light duty and there is not a sufficient number of light duty positions available, the position will be filled as follows: 1) _Senior_ police officer whose injury/illness resulted from a work related incident; 2) _Senior_ police officer whose injury/illness was not work related (emphasis added).

   E. **Article XIII B(6)a, Wages and Classification**: The City in case of cutback in personnel will _layoff starting with the last officer hired_. The City will recall from layoff in reverse order. When there is conflict, badge number is to govern.



AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| In the Matter of the Arbitration Between | : |
| | : |
| CITY OF ERIE | : |
| | :    Act 111 Arbitration |
| - and - | : |
| | : |
| HAAS MEMORIAL LODGE NO. 7 | : |
| FRATERNAL ORDER OF POLICE | : |
| | : |
| AAA Case No. 55 360 L 0376 04 | : |

Elliot Newman, Esquire
Impartial Arbitrator

Gary M. Lightman, Esquire
Arbitrator for Haas Memorial Lodge
No. 7, Fraternal Order of Police

Richard A. Vendetti, Esquire
Arbitrator for City of Erie

The arbitrator, Elliot Newman, was selected by the parties and the undersigned was notified of his selection to hear and decide contract matters then in dispute between these Parties. A hearing was held on November 3, 2005, where the Parties presented evidence and testimony in support of the positions adopted and the Board of Arbitrators met in executive session on November 3, 2005 and the following Award was thereafter adopted.

## AWARD

1.     Term – The term of this award shall be for three years, January 1, 2006 through December 31, 2008.

2.     Wages – Effective January 1, 2006 there shall be an across the board pay increase for all members of the bargaining unit of two (2%) percent; Effective July 1, 2006 there shall be an additional across-the-board pay increase for all members of the bargaining unit of two (2%) percent .

Effective January 1, 2007 there shall be an across-the-board pay increase for all members of the bargaining unit of two (2%) percent; Effective July 1, 2007 there shall be an additional across-the-board pay increase for all members of the bargaining unit of two (2%) percent.

Effective January 1, 2008 there shall be an across-the-board pay increase for all members of the bargaining unit of two (2%) percent; Effective July 1, 2008 there shall be an additional across-the-board pay increase for all members of the bargaining unit of two (2%) percent.

3.     EMT Bonus – Effective January 1, 2006 an officer with an Emergency Medical Technician Certification will receive in addition to his or her base salary an amount equal to two (2%) percent of the base salary.  Any officer desiring to obtain this certification shall be permitted to participate during working hours in training and testing by the City's fire fighters trainer.

4.     Parking – Effective January 1, 2006 the City shall provide thirty (30) swipe cards to the FOP without cost to the officer to be used for first shift parking his or her personal vehicle, only on the top level of the 8th & French Street Parking Ramp operated by the Erie Parking Authority, to be used solely while the officer is on duty or attending any court proceeding in which the officer is a witness.

5.     Sick Leave Buy Back - There shall be no limit to the number of sick days that can be accumulated. Officers can earn one additional vacation day for every five (5) days of unused sick leave in excess of one hundred and fifty (150) days. However, the utilization of a vacation day earned through the use of sick days cannot generate the payment of overtime.

6.     Sick Leave Notice - Medical Certification - replaces G2, Act VII (3)b(2). If an officer intends to be absent due to an illness and is not hospitalized, he or she shall notify as soon as possible in advance of his or her next shift the Officer in Charge of the absence and the expected date of return to work.

7.     Sick Leave - Notice - Medical Certification - replaces G2, Act VII (3)b(3). Unless circumstances dictate otherwise, an officer unable to return to work by his or her expected return date shall notify the Officer in Charge of the new expected return date.

8.     Funeral Leave - The existing funeral leave provision shall be amended to add step-parent and step-child to the three day category.

9.     Personal Leave - The existing personal leave provisions shall be amended to provide for the deletion of the words "any officer who uses personal leave for any other purposes shall be subject to disciplinary action up to an including discharge" and the following language be substituted "personal leave is to be used for any lawful purpose and shall be otherwise restricted."

10.    Medical Benefits - The existing medical provisions shall remain as is.

11.    All existing benefits not modified by the Award shall remain "as is."

With regard to the various items awarded or denied, the arbitration panel may not have been in unanimous accord on each; however, at least a majority of the Board concurred with each awarded item and to the denial of all others.

_____
Date

11/22/05

_____
Elliot Newman, Esquire
Chairman and Impartial Arbitrator

By _____
Gary M. Lightman, Esquire
Arbitrator for Haas Memorial
Lodge No. 7, Fraternal Order
of Police

By _____
Richard A. Vendetti, Esquire
Arbitrator for City of Erie

1

## AMERICAN ARBITRATION ASSOCIATION

DEC 2 6 2001

In the Matter of the Arbitration Between

FRATERNAL ORDER OF POLICE
HAAS MEMORIAL LODGE #7

Act 111 Arbitration

and

CITY OF ERIE

AAA Case No. 55 1. 360 00106 01 RVB

Edward J. O'Connell, Esquire
Impartial Arbitrator

Gary M. Lightman, Esquire
Arbitrator for the Fraternal Order of
Police, Haas Memorial Lodge #7

Gregory Karle, Esquire
Arbitrator for City of Erie

The impartial arbitrator, Edward J. O'Connell, Esquire, was selected from a list of arbitrators furnished by the American Arbitration Association, and was notified of his selection to hear and decide contract matters then in dispute between these parties. A hearing was held on October 3, 2001, where the parties presented evidence and testimony in support of the positions adopted. The time limits of Act 111 were waived at that time by the Parties. The Board of Arbitrators met on November 7, 2001, in executive session and the following Award was thereafter adopted.

MASTER COPY

2

## AWARD

1.    Term - This award shall be effective January 1, 2002 through December 31, 2004.

2.    Wages - Effective January 1, 2002 there shall be an across-the-board pay raise of 4.5%. Effective January 1, 2003 there shall be an additional across-the-board pay raise of 4%. Effective January 1, 2004 there shall be an additional across-the-board pay raise of 4%.

3.    457 Plan - Effective January 1, 2002 a matching 457 Plan shall be established for all police employees. The Plan shall provide for the City to match 50% of employee contributions to a maximum of four (4%) percent.

4.    Service-Connected Disability - Effective January 1, 2002, the existing service- connected disability benefit shall be increased to 75% of final average salary for officers disabled due to the unique perils of public safety work.

5.    Cost-of-Living Provision - Effective January 1, 2002, all working police officers who were hired prior to 1981 shall receive a cost-of-living identical to the cost-of-living provision adopted for officers hired after 1981.

6.    Post-Retirement Medical Coverage - Effective January 1, 2002, for all officers retiring after that date, the existing post-retirement medical coverage shall be amended to cover eligible dependents of retirees in addition to the current coverage of the retiree and a nonworking spouse.  To be eligible a dependent must be under the age of eighteen or must be under the age of twenty-one and be enrolled in an institution of higher learning.

7.    Personal Days - Effective January 1, 2002, one additional personal day shall be added to bring the total to two (2).

8.    Compensatory Time   Article IV. D (2) is deleted and effective January 1, 2002, the collective bargaining agreement shall be amended to provide for compensatory time at the rate of one and one-half for each hour worked, which shall be granted in lieu of overtime pay at the election of the officer. An officer will be permitted to accumulate up to sixty (60) hours of compensatory time. The time shall be used at the officer's discretion, consistent with manpower needs and prior approval by the supervisor, which shall be not be unreasonably withheld.

-3-

9.   Expungement of Records - Efective January 1, 2002, any disciplinary action taken against an officer and placed in his file shall be expunged in the following manner. (1) All written reprimands and notes of verbal reprimand along with suspensions of three days or less shall be expunged after two (2) years. (2) All suspension of four days or more shall be expunged after four (4) years.

10.   Cost of Arbitration - In grievance arbitrations, the arbitrator's award may provide that the non-prevailing party shall pay all of the arbitrator's fees and expenses.  The parties must notify arbitrators of this provision prior to commencement of the hearing.  The determination of the non-prevailing party shall be at the sole discretion of the arbitrator, who shall be  authorized to determine that neither party has prevailed for the purposes of this provision.

11.  Sick Leave

-    Article VII A (2) (a) shall be amended to apply specifically to officers hired before January 1, 1987.

-    Article VII A (2) (d) is deleted and replaced by the following:

     Sick Leave Buy Back   Effective January 1, 2002, for all officers retiring after that date, an officer shall be paid for unused sick days at the following rates:

     | | |
     |---|---|
     | 0-150 days | 15% of the total value of the days |
     | 151-200 days | 25 % of the total value of the days |
     | 201-250 days | 50% of the total value of the days |
     | 251 or more days | 75 % of the total value of the days |

     There shall be no limit to the number of sick days that can be accumulated.

-    Article VII A (3) shall be amended by the addition of the following subsection (3).

     (3) If an officer reports to work and leaves due to illness before four hours are worked, one-half day of sick leave shall be charged.

-    The last sentence of the first paragraph of Article VII A (3) C shall be amended to read as follows:

     In the case of an officer who is injured on duty, the employee will be required to perform light duty (as defined below) as made available by the City and as consistent with restrictions on medical releases.

4

12.  Newly Hired Officer's Compensation - The starting rate shall continue to be 60% of the Class A patrolman rate.  After eighteen months of service, the rate shall increase to 75% of the Class A patrolman rate.  After thirty-six months of service, the officer shall receive Class A patrolman rate.

13.  Vision Care - Effective January 1, 2002, all police employees shall be provided vision care pursuant to the Managed Vision Care Option II Program, which covers 100% of the cost of vision exams, lenses, frames and contacts with a co-pay of $35.00.

14.  Effective January 1, 2002, the City shall adopt a DROP Program pursuant to the following guidelines:

Deferred Retirement Option Program (DROP)  A provision shall be added to the Police Pension Plan effective January 1, 2002 and for retirements after January 1, 2002 which will permit a police officer who has achieved the age and years of service for retirement (is eligible for normal retirement benefits on achieving age 50 and twenty (20) years of service) to make an election after he/she becomes eligible and up to three years before he/she retires to drop from the police pension plan, continue to work and be paid until he retires. This drop option must be in writing on a form provided by the City, signed by the police officer, and notarized and submitted to the City manager prior to the date on which the police officer wishes the drop option to be effective. After the effective date of the drop option, the police officer shall no longer be eligible for disability or pre-retirement death benefits. The drop option notice shall include an irrevocable notice to the City by the police officer that he/she shall include an irrevocable notice to the City by the police officer that he/she shall resign from his/her employment from the City of Erie police department effect on a specific date nor more than 36 months from the effective date of the drop option. Dropping form the Pension Plan pursuant to this drop option is irrevocable and once exercised may not be reversed. Under the drop option, the police officer may continue to work with the City of Erie as a police officer for no more than 36 consecutive months after the date of dropping from the Pension Plan. Upon resignation (retirement) at the end of the drop period, not exceeding 36 months, the police officer shall be paid the pension accumulated during the drop period plus six percent (6%) interest, and continue after resignation (retirement) to receive the pension benefit determined as of the date the member dropped from the Police Pension Plan. The pension benefit is determined as of the drop date and shall increase only as a result of the COLA in effect in the Pension Plan on the drop date. This drop plan shall be structured to conform to the United States Internal Revenue Code provision applicable to governmental plans.

5

15. This Panel shall retain jurisdiction to address questions arising out of the development of specific contract language required to implement any of the foregoing items.

16. All existing terms and conditions of previous arbitration awards and agreements not modified by this Award shall remain as is.

It is understood that the signatures of the arbitrators attest to the fact that at least a majority of the panel has concurred on each issue contained in this Award.

concur                          dissent

_____        _____
Gary M. Lightman, Esquire      Gregory Karle, Esquire
Arbitrator Fraternal Order of  Arbitrator for City of Erie
Police, Haas Memorial Lodge #7

_____
        Edward J. O'Connell, Esquire, Impartial Arbitrator

                    12/17/01
                    Date

# MASTER CONTRACT

Between

## City of Erie
### Erie Pennsylvania

and

## Hass Memorial
## Lodge #7
### Fraternal Order of
### Police

1998 - 2001

MASTER CONTRACT

BETWEEN

THE CITY OF ERIE

AND

HAAS MEMORIAL LODGE #7

FRATERNAL ORDER OF POLICE

## ARTICLE I

### PREAMBLE

This Master Contract entered into by and between the City of Erie, hereinafter referred to as the "City" and Haas Memorial Lodge #7, Fraternal Order of Police, hereinafter referred to as the "F.O.P."

All benefits now provided by the City and contract provisions as they have been negotiated and agreed upon by the parties during their current negotiations are encompassed within this award except as some of them are changed and modified hereby. All other demands are either withdrawn or denied.

## ARTICLE II

### RECOGNITION

The City recognizes the Fraternal Order of Police, Haas Memorial Lodge #7 as the exclusive representatives of all professional police officers. This representation is for the purpose of establishing salaries, and other conditions of employment for all professional police officers.

#### Definitions

A.  The term "OFFICER" when used hereinafter in the contract, shall refer to all sworn professional police employees regardless of rank.

B.  The term "CITY" shall refer to the City Administration, including the Mayor, his representatives and the City Council.

C.  The term "F.O.P." as hereinafter used, shall refer to Haas Memorial Lodge #7, its officers and members.

D.  The term "EMERGENCY" means a situation or occurrence of a serious nature developing suddenly and unexpectedly and demanding immediate attention.

E.  "WRITTEN ORDER" shall be defined as any general order, special order or directive establishing a policy or procedure.

F.  "SENIORITY" is preference or priority achieved by length of service from date of hire and shall prevail in layoffs, promotions, vacation picks and postings.

G.  Special duty and/or special assignment is defined as any duty or assignment which is assigned to an officer, including supervisory personnel, by either the

1

TABLE OF CONTENTS

PAGES

Article I – Preamble
Article II – Recognition
Article III – FOP Rights
Article IV – Hours of Work
Article V – Holidays
Article VI – Vacations
Article VII – Sick Leave/Light Duty
Article VIII – Leave of Absence Without Pay
Article IX – Funeral Leave
Article X – Family Leave Act
Article XI – Personal Leave
Article XII – Military Leave
Article XIII – Wages & Classifications
Article XIV – Health, Welfare & Pension
Article XV – Settlement of Disputes
Article XVI – Miscellaneous Provisions
Article XVII – Safety of Officers/Dept. Efficiency
Article XVIII – Transfers
Article XIX – Educational Opportunities
Article XX – Terminations
Article XXI – Non-Discrimination
Article XXII – Agency Shop
Article XXIII – Management Rights
Salary Schedule

Mayor or the Chief of Police. Special duty involving the same individual shall not last for more than 120 working days in any one calendar year without the duty being posted in conformity with Article XVIII, unless secrecy is an element of the assignment. When special duty and/or a special assignment is given to an officer covered under the terms of this agreement, the F.O.P. President will be notified of the assignment within twenty-four (24) hours.

H. When used in this contract, "he" shall mean "he" or "she".

### ARTICLE III

### F.O.P. RIGHTS

A. The F.O.P. and its representatives shall be allowed to use the Blue Room at Police Headquarters at reasonable hours for meetings with the approval of the Chief of Police and in accordance with established use of building procedures.

B. (1) Whenever any representative of the F.O.P. is required to participate during working hours in negotiations or grievance proceedings, he shall suffer no loss of pay. The representative shall give his immediate supervisor advance notice of the starting and finishing time of such meetings. Immediately following Union business during working hours, the F.O.P. representative shall submit the proper form to the Division Commander/Deputy Chief specifying the date, starting time and finishing time of such meetings.

(2) The President of the F.O.P. shall be allowed to investigate grievances or complaints which come to his attention, during working hours, without loss of pay.

C. The F.O.P. shall have the exclusive use of the bulletin board in the basement locker room with a copy of any posting to be submitted to the Chief of Police. No material of a derogatory or inflammatory nature shall be posted.

D. (1) The City agrees to deduct from the salaries of officers who are members of the F.O.P., dues and assessments on a monthly basis, as certified by the secretary of the F.O.P., provided the officer has signed an appropriate deduction authorization form.

(2) Said dues are to be deducted from the first paycheck in each calendar month and shall be deposited with the secretary of the F.O.P. before the end of the month in which said dues were collected.

(3) The F.O.P. shall hold the City harmless from any liability for actions it may take to comply with this provision.

E. When requested, the Chief of Police shall meet once a month with no more than five representatives of the F.O.P. to discuss matters of mutual concern. The agenda of each meeting is to be submitted five days prior to said meeting. All departmental notices and directives shall be sent to the President of the F.O.P. or his designee, prior to issuance, and consultation shall be held on those requested by the F.O.P. President, or his designee.

F. Any officer who is a member of the Board of the F.O.P. shall be allowed to attend any F.O.P. meeting during working hours without loss of pay. The President and the Secretary of the F.O.P. shall be permitted to attend either state or national conventions for a period not to exceed one (1) week without loss of pay. The

2

President and Secretary will be permitted to attend the Summer and Winter Board Meetings and Third Class City Meetings of the State F.O.P. Lodge without loss of pay. In no case will any of the above officers be permitted more than a total of ten (10) days of annually.

G. As long as the President of the F.O.P. holds the rank of sergeant or below, he shall be assigned to the day shift during his term in office.

H. Notice of Disciplinary Action – No dismissal, demotion, transfer, reassignment or other personnel action which might result in a loss of pay or benefits or which might be considered a punitive measure shall be taken against a law enforcement officer of the City unless he is notified thereof and provided with the reason therefore prior to the effective date of such action in writing and hand delivered with written receipt of delivery. There shall be no retaliation against an employee by reason of the exercise by him of the rights granted him by this agreement. Furthermore, immediate disciplinary action may be imposed for infractions violations in situations where delay could injure the discipline, morale, reputation or good name of the Bureau of Police. Criminal infractions of the level of misdemeanor or felony, excluding traffic related offenses, shall be cause for immediate suspension without pay.

I. Grievance Procedure – The procedure for handling a grievance of law enforcement officers shall be as in Article XV.

J. During the interrogation of an officer as part of an investigation of suspected criminal conduct.

(1) The officer shall be entitled to have one representative of his choosing present.

(2) A police officer, whether a subject or a witness, must be informed of the nature of the interrogation at the outset of the interrogation.

(3) If the interrogation officer writes a written statement, a transcript is taken, or mechanical or electronic record is made, a copy of same must be given to the interrogated police officer, without cost, upon receipt.

(4) Any police officer under interrogation that is under arrest or is likely to be placed under arrest as a result of the interrogations, shall be completely informed of all of his rights prior to the commencement of the interrogation.

(5) The specific reasons for discipline or discharge should not normally be the subject of public comment by the City without the consent of the police officer.

K. (1) No officer shall have any comment adverse to his interest entered in his personnel file, or any record kept at his place of employment, without the officer having first read and signed the document containing the adverse comment indicating that he is aware that such comment is being placed in his personnel file or other place of recordation of such comments, except that such entry may be made if after reading such instrument containing any adverse comment the officer refuses to sign it. A witness shall thereafter note that such officer was presented with the opportunity to read and sign such instrument and refused to do so.

3

(2) All officers shall be required to rotate shifts. In most cases, officers will not be required to work one shift for more than one (1) month without their consent. The Chief of Police may assign officers to a shift for periods of more than one (1) month on an as needed basis, provided the first requests volunteers to perform the work. If there are no volunteers or if an insufficient number of qualified volunteers are available, the Chief may assign a qualified officer or officers to perform the duty in reverse order of seniority.

**B. Pay Period**

(1) A pay period shall consist of eight (8) hours; ten (10) workdays, with no more than six (6) days consecutive, except for the 4-2 schedule.

(2) The salary of officers shall be paid biweekly on Friday of the appropriate week. In the event this day is a holiday, the preceding City workday shall be the payday.

**C. Shift Differential**

Any officer required to commence a work shift between 1200 and 0600 shall be paid a shift differential of (3.25%) of his normal hourly pay.

**D. Overtime**

(1) Any officer who works longer than his regular shift hours per shift will be compensated at a rate of one and one half (1-1/2) his normal hourly pay for that time with an understanding that a fifteen (15) minute grace period must expire before such overtime is acquired.

(2) The F.O.P. and the City agree that there is not to be given to any officer only the E.P.D. compensatory time for any overtime work.

(3) Any officer entitled to overtime pay shall be compensated for such overtime in the next pay period immediately after the overtime occurs.

(4) Call Time — An officer who has been called to work outside of his regular shift schedule shall be guaranteed a minimum of four (4) hours at regular rate of one and one-half (1-1/2) hours worked, whichever is greater.

**E. Court Appearance**

(1) a. Any officer required to appear before a District Justice because of action taken in line of duty shall be compensated with a minimum of two (2) hours pay at one and one-half (1-1/2) his normal hourly rate.

b. Any officer required to appear before County Court or Federal Court because of action taken in the line of duty shall be compensated with a minimum of three (3) hours pay at one and one-half (1-1/2) times his normal rate. Should an officer who is working second or third shift be required to appear in Court for the morning shift only, he shall be paid as above. However, should such appearance continue into the afternoon session, that session shall be considered separate from the morning session and paid as above. In the alternative, the appropriate supervising officer, at his discretion may schedule the officer off duty for his normally scheduled second or third shift, and the Court appearance shall constitute his duty for the day and he shall be paid at straight time.

5

(2) Any officer shall have thirty (30) days within which to file a written response to any adverse comment entered in his personnel file. Such written response shall be attached to and shall accompany the adverse comment.

(3) When an anonymous complaint is made against a police officer and no corroborative evidence is obtained, the complaint shall be classified as unfounded.

(4) When any citizen complaint (a) alleges facts which if true could not lead to a criminal charge, and (b) is filed beyond the legal time limits for filing a civil complaint on such facts, then the complaint shall be classified as unfounded or stale, and the accused police officer shall not be required to submit a written report, but he shall be notified orally or in writing of such claim.

L. When a police officer is suspended for a matter which does not involve a criminal offense, the Chief of Police shall have the option of having the officer work an extra day without pay or having the officer suspended without pay for each day of the applicable suspension period.

M. Any disciplinary action (i.e., written reprimands and/or suspensions) shall remain a permanent record in the police officer's personnel file.

N. When an officer for any reason is being investigated, the investigation shall be conducted by an officer of a rank higher than the officer under investigation. This is to include traffic accidents while on or off duty. Any suspension notice will be served by an officer of a higher rank than the officer being served with the suspension notice. (For purposes of this section ranks shall be patrolman, corporal, sergeant, lieutenant, captain, deputy chief, chief).

O. All rules, regulations and procedures of the Erie Police Department shall be reviewed every six (6) months and updated with consultation between the City and the F.O.P. If said rules, regulations and procedures are changed in any substantive manner.

**ARTICLE IV**

**HOURS OF WORK**

A. (1) The regular hours of work shall be eight (8) hours consecutive with 2,080 hours in a calendar year and 260 workdays per year, and the salary shown in Appendix A is based upon same. If, because of the way the work schedule of an officer runs in a calendar year, an officer works over 260 days for that calendar year, the additional day or days shall be paid as straight time in addition to his normal salary. The City agrees that the officer's salary will be paid in the calendar year.

The 4-2 schedule which is currently in effect in the traffic division shall be continued in effect during the term of this agreement unless changed by mutual agreement of the parties and also shall be administered to insure that in each calendar work year, each police officer working a 4-2 schedule shall provide at least 2,080 hours of straight time work for the City of Erie consistent with the provisions of Article IV-A (1). Any additional hours required to be worked to meet the 2,080 hour requirement may be training time, overtime, or court time, shall be scheduled by the City and such hours in addition to the 4-2 schedule shall not be paid at an overtime rate.

4

(2) The above compensation is in consideration of time spent outside the regular workweek.

(3) All fees paid to the officer by the Court will be placed in the City of Erie General Fund.

### ARTICLE V

### HOLIDAYS

A. The following days will be considered as paid holidays for each officer.

1. New Year's Day
2. M.L. King's Birthday
3. Friday Before Easter
4. Easter
5. Memorial Day
6. Independence Day
7. Labor Day
8. Thanksgiving Day
9. Christmas Day
10. President's Day
11. Veteran's Day (effective in 1999)

B. Such compensation shall be in addition to, and not in lieu of any other compensation provided under the terms of this agreement.

C. In accordance with the above, any officer who actually works four (4) days in a holiday week will receive his normal salary for that week and any officer who actually works five (5) days in a holiday week will receive one (1) additional day's pay in addition to his normal salary for such week.

### ARTICLE VI

### VACATIONS

A. Eligibility and Allowances

(1) Every officer shall be eligible for paid vacation after one (1) year service with the City of Erie.

(2) Officers shall start to earn vacation allowances as of their date of hire.

(3) Vacation allowance shall be earned annually.

| | | |
|---|---|---|
| 1 year- | - | 10 days |
| 2 years | - | 10 days |
| 3 years | - | 12 days |
| 6 years | - | 13 days |
| 8 years | - | 15 days |
| Over 10 years | - | one additional day for each year of service over 10 to a maximum of 25. |

B. Vacation Pay

(1) The rate of vacation pay shall be based on the officer's normal hourly rate with night differential added according to The percentage of time the officer works night shift during the year.

(2) Each officer may elect, at his own discretion, to receive his vacation pay no later than one (1) day before his vacation begins in one lump sum, or may elect to receive it in the normal manner of distribution.

C. Choice of Vacation Periods

(1) Vacations shall be selected by seniority by unit and may be taken at one time or broken down into any combination of periods with a minimum time period of one (1) week.

(2) Extra vacation days shall be scheduled at times mutually approved by the City and the officer.

(3) The term "UNIT" shall mean each specialized group in the Bureau with each patrol division shift service as a unit. Examples of units are; detective, juvenile, I.D., K-9, and traffic.

(4) If a paid holiday occurs during an officer's vacation period, he shall be compensated the same as if he were working.

D. Scheduling of Vacation

(1) Vacations shall be scheduled on a year round basis from January 1st through December 31st.

(2) By November 1st of the year preceding the year that vacations are to be taken, a sign-up sheet shall be posted and vacations shall be picked by seniority, with all vacations picked by December 31st of that year.

(3) In cases of emergency when vacations must be rescinded, the vacations will be rescheduled at the earliest convenience at a time mutually approved by the City and the officer.

(4) Any officer who retires from the bureau prior to taking his vacation shall be compensated in cash for the unused vacation he has accumulated at the time of separation.

(5) All vacation periods will start on Monday morning and end on Sunday evening.

(6) An officer who becomes ill during his vacation will not be charged annual leave for the period of serious illness or hospitalization, provided he furnishes satisfactory proof of such illness to the City immediately.

(7) If an officer dies before he has taken his vacation, his designated beneficiary shall receive that officer's unused vacation pay.

f.  Sick leave is to be used only for the purposes stated in this contract. An officer who used sick leave for any other purpose shall be subject to disciplinary action up to and including discharge.

g.  Any officer because of health or physical condition is unable to perform the normal police function, shall be where possible placed on light duty as provided for, by paragraph B (6) of this Article.

(3) a.  REPORTING OFF DUTY

(1)  Any officer who is unable to report for duty because of illness or injury must notify the officer in charge at least one hour before the start of his/her scheduled work shift.

(2)  The OIC shall be informed of the nature of the illness or injury. This information shall be recorded on the prescribed form and forwarded to the attention of the Division Commander and Chief.

b.  NOTICE – MEDICAL CERTIFICATION

(1)  An officer who is hospitalized shall immediately notify the officer in charge of his admission, diagnosis, prognosis, and date of discharge and expected date of return to work.

(2)  An officer absent and not hospitalized shall immediately notify the officer in charge of his condition, prognosis, and expected date return to work.

(3)  Unless circumstances dictate otherwise, officers are required to report off daily throughout their period of absence.

(4)  Upon return from any absence, which extends three days or more, the officer must submit a certificate from his physician certifying the cause of his disability and his ability to return to duty. The officer may be required to submit to a physical examination by a physician of the City's choice.

(5)  Any restrictions, such as light duty restrictions, must be stated with particularity by the attending physician. An officer will be required to return to duty subject to such restrictions if work is available within the restrictions. This also applies to an officer who is injured on duty.

(6)  Light duty restrictions are intended to apply only for a period of rehabilitation and cannot be honored for extended periods of time. Extended periods of such partial disability will be reviewed on case by case basis and handled appropriately.

c.  LIGHT DUTY POLICY FOR CITY OF ERIE POLICE OFFICERS

The purpose of this policy is to return police officers, who have been temporarily disabled as a result of either work related or non work related injuries or illness, to productive activity. This will be done in an effort to return the police officer to full and normal duty, by providing the individual light duty for a reasonable period of time, based on the individual circumstances, within the City of Erie Police Department operations. In

9

---

(8)  If any officer whose status is "I.O.D." and his vacation period falls during this time, he shall be able to reschedule his vacation at his discretion if at all possible.

(9)  If after the vacation schedule is completed, two officers find it necessary or convenient to trade vacation periods, such trades shall be allowed provided both officers are on the same shift and have same duty assignment subject to the approval of the Chief.

(10).  Each patrol division shift shall have a maximum of three (3) men off per vacation period provided three (3) or more qualified men request vacation.

ARTICLE VII

SICK LEAVE

A.  Allowance

(1)  Any officers contracting or incurring any non-service connected sickness or disability, which renders such officer unable to perform the duties of his employment, shall receive sick leave with pay.

(2) a.  Officers shall earn twenty-five (25) days sick leave after six (6) months of working service. An additional fifteen (25) days sick leave will be earned for each year of service thereafter and shall be accumulated to a maximum of one hundred fifty (150) days. The pool of accumulated sick days are to be kept separate from the twenty-five (25) days given each calendar year and to be used only after the twenty-five (25) days from that calendar year used.

b.  Officers hired on or after January 1, 1987, shall earn fifteen (15) days sick leave after six (6) months of working service. An additional fifteen (15) days sick leave will be earned for each year of service thereafter and shall be accumulated to a maximum of one hundred fifty (150) days. The pool of accumulated sick days to be kept separated from the fifteen (15) days given each year and to be used only after the fifteen (15) days from that calendar year are used. There shall be no proration of sick days for newly hired officers.

c.  Officers may use up to three days sick leave in any calendar year where sickness or accident in the immediate family require the officer's absence from work (see Article IX, 1 (a) for definition of immediate family). The City may require proof of such family illness.

d.  Any police officer who retires from the bureau and who has accumulated sick leave time shall be paid at the rate of $25.00 per day for each day of accumulated sick leave existing at the date of retirement up to a maximum payment of $3,125.00 (125 days).

e.  Officers can earn one day additional vacation time for every five days of unused sick leave in excess of 150 days. This additional vacation time must be used on one of the officer's vacation picks.

8

d. VISITATION

The City may contact or visit an officer who is absent on sick leave at any time to verify his disability and to provide any help or assistance that may be appropriate.

## ARTICLE VIII

## LEAVE OF ABSENCE WITHOUT PAY

A. Eligibility Requirements

(1) Officer shall be eligible for leave of absence after the first (1st) forty-eight (48) months of service are completed.

(2) Officers may be granted a leave of absence without pay if the requirements of the Police Department permit, subject to the approval of the Chief of Police and the Safety Director. Leaves of absence will not be granted for the purpose of trying another position, venturing into or operating a business.

B. Application for Leave of Absence

(1) Any request for a leave of absence shall be submitted in writing by the officer to his immediate supervisor. The request shall state the reason the leave of absence is being requested and the approximate length of time off the officer desires.

(2) Authorization for a leave of absence shall be furnished to the officer by the Chief of Police or his designee and shall be in writing.

B. Miscellaneous

(1) A leave of absence, under this Article, shall be defined as a period of time off, up to but not exceeding one (1) year, without pay.

(2) During a leave of absence, the officer shall maintain his seniority.

(3) It is not the intent of this Article to deprive any individual from his or her right to earn a living provided that the primary reason for the leave of absence is not to try another line of work or start a business.

(4) An officer who is elected or appointed, as F.O.P. official or representative must, at the written request of the officer, be granted leaves without pay for the maximum term of office, but not to exceed two (2) years. Such leaves shall be renewed or extended pursuant to the written request of the F.O.P. and the City.

(5) Five (5) members of the F.O.P. elected, as official delegates for the annual conference of the F.O.P. shall be granted up to three (3) weeks leave without pay each year where such time is necessary to attend the annual conference.

(6) After completing forty-eight (48) months of service, an officer will be granted a leave of absence without pay for educational purposes when the courses are not available in the City of Erie and if job related.

11

---

the case of an officer who is injured on duty, the employee will be required to perform light duty (as defined below) only if he has been unable to work for more than 30 days.

As used herein, the term "light duty" shall mean duties within the Police Department that have traditionally been performed in whole or in part, by members of the bargaining unit (unless otherwise agreed to by separate agreement).

Light duty may involve light to moderate sedentary duties and may consist of light filing and sorting or any other general office duties including, but not limited to, answering the phone, telephonic investigations, attending to minor errands, projects and chores, at the direction of the Police Chief or his designee. Light duty will provide the police officer with the option of sitting, standing, walking, resting, or as otherwise directed by the individual's treating physician.

In the event that more than one police officer becomes eligible for light duty and there is not a sufficient number of light duty positions available, the position will be filled as follows:

1) Senior police officer whose injury/illness resulted from a work related incident

2) Senior police officer whose injury/illness was not work related.

It is understood, however, that an officer whose injury/illness was not work related will not be removed from a light duty position in order to make the position available for an officer whose injury was work related.

Police officers who are assigned to light duty shall be permitted (consistent with their limitations and manpower availability), to participate in training and attend union business. They will also be afforded sufficient time to attend to their disability related medical needs, including, but not limited to, doctor's visits, medical tests and physical therapy.

Light duty police officer will not be assigned to street patrol duties or other physically taxing emergency duties. Light duty police officers will be paid their pre injury wage. This will include shift differential and bonus pay (i.e., motorcycle, K-9, and family crisis) only.

Upon being released by the attending physician to return to full unrestricted duty, the affected police officer shall return to the same position that the police officer held prior to incurring the disability.

Police officers who cannot perform light duty work for a reasonable period of time will remain off of work until they are able to physically return to work, either on limited or full duty, as previously described in this policy.

10

(7) When a leave without pay is granted for reason of illness, the officer will be guaranteed his job upon return provided he has a doctor's certification from a licensed medical professional stating that he is able to return to the job.

## ARTICLE IX
## FUNERAL LEAVE

(1) a. All police officers shall be allowed five (5) working days beginning with the date of death, with full pay, in each case of death of a member of the immediate family. The term 'immediate family' shall be understood to include the following; mother, father, brother, sister, son, daughter, spouse.

b. In other cases, grandmother, grandfather, grandson, granddaughter, son-in-law, daughter-in-law, parent-in-law or near relative who resides in the same household, absence will be allowed with pay through the day of the funeral with a maximum of three (3) days. Days not scheduled as workdays will be counted but not paid.

(3) In all cases of death of near relative; aunt, uncle, niece, nephew, brother-in-law and sister-in-law, the officer will be paid for the absence on the full day necessary to attend the funeral.

## ARTICLE X
## FAMILY LEAVE ACT

In accordance with the federal Family and Medical Leave Act (FMLA) of 1993, eligible employees may be granted a total of 12 work weeks of unpaid leave during a 12 month period for:

(a) The birth of a child, or placement of a child for adoption or foster care;

(b) A serious health condition of the employee that makes him/her unable to perform the functions of the positions; or

(c) A serious health condition of a spouse, son, daughter, or parent.

For purposes of this section, the 12 month FMLA period during which an employee is entitled to leave is measured forward from the date of the employee's first leave during the 12 month period after the leave begins. Intermittent leave may be permissible under certain circumstances. The next 12 month period will begin the first time the employee requests FMLA leave after the completion of the previous 12 month period.

## ARTICLE XI
## PERSONAL LEAVE

A. Every officer shall be entitled to one (1) day personal leave per year. Such leave shall be used for matters, which cannot be scheduled outside working hours and shall result in no loss of pay.

(1) The officer desiring to use personal leave time shall notify his superior at least seventy-two (72) hours in advance, except in cases of emergency.

12

(2) It is understood that personal leave will not be used for vacation days, but may be used for sick leave if the officer has used all of his sick time.

(3) Any unused personal days at the end of the year shall expire and cannot be carried over to the next year.

(4) Personal leave is to be used only for the purposes stated in this contract. An officer who used personal leave for any other purpose shall be subject to disciplinary action up to, and including discharge.

B. Birthday

(1) Every officer is entitled to his birthday off with pay.

(2) If the officer's birthday falls on his regularly scheduled day off, the officer shall select another day off within a thirty (30) day period.

## ARTICLE XII
## MILITARY LEAVE

A. Any officer who is a member of any reserve component of the Armed Services shall be granted leave of absence pursuant to applicable law for not exceeding fifteen (15) days in any year during which he shall be engaged in active service of the United States or in field training ordered or authorized the Federal Forces.

B. Officers who shall volunteer for military service shall be placed upon military leave for the duration of such service.

(1) During said military leave the officer shall continue to receive seniority as well as other benefits awarded which shall be added to his salary upon his return to work.

C. Officers who shall be required to enter military service shall continue to receive seniority and longevity benefits as well as other benefits awarded which shall be added to his salary upon his return to work.

## ARTICLE XIII
## WAGES AND CLASSIFICATIONS

A. The basic annual salaries for officers as agreed to by the parties are shown in Appendix A.

B. Classification

(1) Each new officer hired must go through the following steps:

(a) Probationary Patrolman – When appointed to the bureau, an officer shall be classified as a probationary patrolman and shall receive a salary equal to 60 percent of the Class A patrolman rate set forth in Appendix A. In addition, the officer shall receive all fringe benefits

13

except the right to sick time with pay during the first six months of employment and the grievance procedure.

(b) 12 Months – After twelve (12) months, the officer shall be entitled to the benefits of the sick leave provision and shall receive a salary equal to 70 percent of the Class A Patrolman rate set forth in Appendix A. After successful completion of one (1) year's service, the officer ends his probationary status and will be entitled to the provisions of the grievance procedure.

(c) 24 Months – After twenty-four (24) months, the officer shall receive a salary equal to 80 percent of the Class A Patrolman rate set forth in appendix A.

(d) 36 Months – After thirty-six (36) months, the officer shall receive a salary equal to 90 percent of the Class A Patrolman rate set forth in Appendix A.

(e) 48 Months – After successful completion of forty-eight (48) months, the officer is classified as a Class A Patrolman and shall receive the rate for that classification as set forth in Appendix A.

Effective January 1, 2000, Class A Patrolman assigned as Investigators to the Criminal Investigation, Juvenile, Vice or ID Divisions, will be paid a base salary equal to that of a corporal.

(2) Longevity

The longevity schedule shall be as follows:

One percent (1%) of base salary upon the completion of four (4) years of service, and an additional one-fourth (1/4) of one percent (1%) for each additional year of service up to a maximum of thirty-two (32) years of service.

The longevity shall be paid as part of the base salary, however, the anniversary dates for the purposes of increment increases shall be January 1st for all persons hired between January 1st and June 30th, and July 1st for all persons hired between July 1st and December 31st.

(3) Rank Differential

The rank differential shall be s follows:

Corporal's basic annual salary shall be 2.0% above a Class A Patrolman's basic annual salary.

Sergeant's basic annual salary shall be 5.0% above a Class A Patrolman's basic annual salary.

Lieutenant's basic annual salary shall be 9.0% above a Class A Patrolman's basic annual salary.

14

Captain's basic annual salary shall be 13.0% above a Class A Patrolman's basic annual salary.

(4) Any officer who has successfully completed forty-eight (48) months service or who holds a law enforcement related degree should be compensated for such degree in the following manner:

Associate Degree - $200.00 added to basic annual salary.

Bachelor Degree - $600.00 added to basic annual salary.

Bachelor Degree and 15 hours - $800.00 added to basic annual salary.

Masters Degree - $1,000.00 added to basic annual salary.

"Person for person trades of shifts will be granted to attend school provided both officers belong to the same unit and can perform the same assignments. Each employee attending school shall provide the Chief of Police with his or her school schedule at the beginning of each semester."

The following shall be considered law enforcement related degrees:

a) Police Science/Police Administration

b) Criminal Justice/Criminal Justice Administration

c) Criminology

d) Forensic Science/Criminalistics

e) Juvenile Justice

f) Criminal Justice Planning/Evaluation

g) Behavioral Science/Psychology with a minor in Criminal Justice.

h) Behavioral Science (includes counseling, psychology, computer science, etc.)

i) Accounting

Educational Bonus Compensation under this sub-section, if any, shall be paid in two equal lump sum payments, the first lump sum being paid in July with the second being paid in December.

(5) Training Compensation

Any officer who is required by the City to attend Act 120 School training or assignment out of town will be compensated in accordance with the State Act, which will pay their travel allowances and expenses.

15

(6) Seniority

(a) The City in case of a cutback in personnel will layoff starting with the last officer hired. The City will recall from layoff in reverse order. When there is a conflict, badge number is to govern.

(b) No member of the police force having been promoted shall be demoted in rank except for proper cause.

(7) Pay out of Rank

The City of Erie will pay each police officer assigned by the Police Chief to work out of rank the minimum of the pay for such rank, if higher, for each full shift so worked, commencing with the first calendar day of such assignment. Pay out of rank will cease when the police officer reports back to normal duty.

ARTICLE XIV

HEALTH, WELFARE AND PENSION

A. Health

(1) The City shall continue to provide a program of health insurance for all officers and their eligible dependents. It is understood and agreed that the following benefits are added to the coverage.

a. Outpatient surgery for specific procedures.

b. Pre-hospitalization review.

c. Second opinion obtained prior to surgery.

(2) The City shall provide prescription benefits under Blue Cross Blue Shield comparable to the prescription benefits as set forth under the AFSCME Health and Welfare Fund Plan for all officers and eligible dependents.

(3) The City shall provide for all officers and their families to receive eye care benefits per Vision Care, or its equivalent with the F.O.P.

(4) There shall be provided as negotiated at the City's cost and expense, a dental program for the F.O.P. with family coverage.

(5) Employees shall have the option of electing to be covered under the Selectblue Point-of-Service Plan. The City will pay the premium cost for employees and dependents.

B. Welfare

(1) Life insurance to be provided police officers to $20,000.00.

16

(2) The City shall provide a program of false arrest insurance for all police officers. Said program may be provided through commercial insurance or through a program of self insurance provided, however, that minimum limits of one hundred thousand ($100,000) per person and three hundred thousand (300,000) per occurrence shall be maintained.

C. Clothing Allowance

(1) The clothing allowance of each police officer shall be five hundred dollars ($500.00) per year, except the officers working in plain clothes shall be paid the same amount. In two (2) equal installments, one half (1/2) of their allowance into the clothing allowance in January and one half (1/2) to be put into their check in June. There shall be no proration of this benefit for newly hired officers in the calendar year following their date of hire.

(2) The clothing allowance is to be open all year round (January 1st to December 31st) to purchase wear and tear only. This means all items that are used by officer.

(3) Reimbursement for damage to clothing or equipment insured while actively engaged in police duties, not due to the negligence of the officer, shall be allowed, providing such reimbursement shall be approved by the Chief and provided further that the receipt of any funds from their persons for such damage shall revert to the clothing allowance fund. Such reimbursement shall be allocated within seventy-two (72) hours of proof of loss.

(4) Any change in style of uniform is an administrative prerogative, which will not be exercised by the administration during the term of this agreement.

(5) The City shall, in June of each year, pay each police officer three hundred dollars ($300.00) for uniform cleaning allowance.

(6) The City shall notify each officer on or before January 15th of each year of the balance left in each officer's clothing allowance account. On January 15th the officer will be notified of the balance of January 1st. On June 15th the officer will be notified of the balance as of May 31st. Furthermore, on or before the aforesaid dates the City shall provide a list of all available items, with prices, to each officer.

D. The City and the F.O.P. have agreed that the present pension plan as operated by the Police Relief and Pension Association is to continue according to provisions as set forth by separate agreement.

LEGAL FUND

The City shall pay to a trust account to be managed by the Fraternal Order of Police the sum of $2.00 per month, per employee. The account shall be used to fund a group legal services plan for members of the Fraternal Order of Police. However, the parties agree that the fund shall be used solely for personal legal representation of the F.O.P. members and shall exclude payment for legal representation in any legal proceedings involving the City, employment grievances, labor negotiations or F.O.P. matters, and further the F.O.P. agrees to

17

permit examination of accounts and records concerning said fund as to insure compliance with this agreement.

## E. VESTED RIGHTS

Any police officer that has twelve (12) years or more accredited service may vest his rights. However, military service time may not be counted to attain twelve (12) years. Furthermore, the vested benefits may not be withdrawn until the minimum age of retirement. The pension he will be eligible for will be an actuarial equivalent based on his years of service and his rate of pay at the time he deferred his pension.

## F. RETIREES HOSPITAL AND MEDICAL INSURANCE

Effective January 1, 1992 all officers retiring shall be eligible for basic hospital and medical insurance coverage for the officer and their non-working souse under the following conditions;

(1) The retired officer has, no other health insurance coverage available at the time of retirement either on a contributory or non-contributory basis,

(2) The obligation to provide such coverage shall cease immediately upon the retired officer becoming eligible for coverage under any other health insurance plan, either as an employee or as a dependent and whether or not such coverage is provided on a contributory or non-contributory basis.

(3) The officer will certify in writing at the time of retirement and no less than annually thereafter, that he/she and his/her spouse are not eligible for other health insurance coverage. Failure to provide annual notification will create a presumption of ineligibility. However, upon loss of eligibility for such coverage, the City shall restore to the officer and spouse coverage under the Plan the officer had prior to eligibility for other coverage.

## G. PROCEDURES FOR HEART AND LUNG ACT CLAIMS

### Section 1

General Provisions/Scope

This agreement applies to all proceedings before hearing examiners selected by the City to hear claims filed pursuant to the Heart and Lung Act, 53. P.S. § 637. There shall be no changes or amendments to the procedures as listed below unless such changes are negotiated between the City of Erie and the F.O.P. Haas Memorial Lodge #7.

18

### Section 2

Claims Processing

A. Initial Claims

1. An initial claim shall be filed with the City of Erie Human Resources Department through the Police Chief's Office within one hundred twenty (120) days of the date in which claimant knew or should have known of the work related injury.

2. (a) The initial claim must be submitted through the claimant's immediate supervisor on the form provided by the City, entitled "Employer's Report of Occupational Injury Disease".

b) The appropriate section of the claim form must be completed indicating that it is being filed as a claim under the Heart and Lung Act.

3. The City's Safety/Benefits/Loss Coordinator will make a determination on behalf of the City, approving or denying any claim within seven (7) days of receipt of the initial claim and, if necessary, medical documentation.

4. In the event the City's representative denies a claim, a "Notice of Denial" will be served on the claimant. Such notice will advise the claimant of his or her right to request a review of the determination by the City's Director of Human Resources and the time period of such review. A copy of the Notice of Denial will also be sent to the F.O.P. Haas Memorial Lodge #7.

B. Reporting to the Physician

1. If medical attention is required, the injured employee must report to one of the licensed physicians identified by the City on the "Panel of Physicians for a period of up to ninety (90) days. After the ninety (90) day requirement, or if surgery is required, the injured employee may elect to be treated by a physician of his or her choice. The "Panel of Physicians" will contain a list of health care providers agreed upon by the City and the F.O.P. and will be subject to review on a six month basis (August and January).

2. Insured employees must notify the City's Safety/Benefits/Loss Coordinator within five (5) days of a change in physicians. Failure to do so may result in the employee being liable for all medical charges following the unmodified change.

19

monthly salary being paid to a Class A Patrolman. In addition, effective January 1, 2000, the employee contribution rate for officers hired after January 1, 1981 shall be increased by one-half of one percent (1/2 %) to a total of five and one-half percent (5½ %). Effective January 1, 2001, said rate for such officers will increase by an additional one half of one percent (1/2 %) to a total of six percent (6%).

Police officers who were hired prior to January 1, 1981 will continue to be entitled to the same pension benefit that had been available to them prior to January 1, 1998, and will not be required to increase their employee contributions during the term of this agreement.

## ARTICLE XV

## SETTLEMENT OF DISPUTES

### Section 1

**Definition:** A grievance is a dispute concerning the interpretation, application or alleged violation of a specific term or provision of this agreement.

### Section 2

**Procedure:** The parties hereby agree that during the settlement of disputes as described herein, there shall be no disruption of services to the public or deprivation of pay, allowances or other emoluments due an individual officer until the following procedure has been exhausted, except that immediate suspensions may be imposed for infractions or violations in extreme situations where delay could injure the discipline, morale, reputation or good name, of the Bureau of Police and as provided in Article III H.

**Step 1:** The matter shall first be discussed orally among the Division Commander/Deputy Chief, the President of the F.O.P. or his designee, and the officer affected or involved. This shall be an informal hearing held within ten (10) days of the occurrence of the events giving rise to the grievance or knowledge of its occurrence. If such informal hearing does not resolve the grievance, the grievance may be processed to the next step.

**Step 2:** Within eighteen (18) calendar days of the events giving rise to the grievances or the time when the grievant or F.O.P. knew or should reasonably have known of such events, if the grievance remains unresolved through Step 1, it shall be reduced to writing, specifying the sections of the agreement allegedly violated and the specific relief requested and be presented to the Chief of Police. The Chief shall meet with the grievant and the President of the F.O.P. or his designee within two (2) calendar weeks of another representative available for consultation during such grievance meeting. The Chief shall give a written answer to the grievance within five (5) workdays following the meeting.

**Step 3:** If the grievance is not satisfactorily resolved at Step 2, a written appeal must be made by the officer or the F.O.P. representative within five (5) workdays of the receipt of the Step 2 decision. The Director of Human Resources, or his/her designee, shall hold a closed hearing for each grievance, with those involved, (the officer, the F.O.P. representative, the officer's superior, and any other witnesses the parties may request) within two (2) calendar weeks of the receipt of the written

21

---

3. Where the City has approved an initial claim, all medical bills will continue to be paid by the City until there is no dispute that the disability no longer exists or the procedures in III B have been completed.

4. In all cases when surgery is recommended, the injured employee shall be permitted to obtain a second opinion from a physician of his or her choice. The City shall pay the cost for the second opinion provided that the physician chosen by the employee is Board certified in the specialty area for which the surgery is recommended.

5. Prior to the injured employee proceeding with physician treatment/surgery from a non panel provider, that employee must consult with a panel physician provided such treatment or surgery is within the first ninety (90) days of treatment. The final decision as to the surgery and choice of surgeons would remain with the employee.

6. A copy of physicians and medical facilities shall be sent and delivered to each employee.

### Section 3

### Contested Claims

**A.   Initial Claim Denials**

In the event the Director of Human Resources affirms the Safety/Benefits/Loss Coordinator's denial of benefits after review, the claimant shall be permitted to request an evidentiary hearing by a neutral hearing examiner selected by the City. The request for hearing must be submitted within thirty (30) days of the determination by the Director of Human Resources. Hearings before the hearing examiner shall be conducted in accordance with the Administrative Agency Law, in which the employee bears the burden of proof. In the event the hearing examiner allows the claim, the City will provide all benefits that the officer would have been entitled to if the claim was initially approved by the City.

**B.   Active Claims**

For those claims where the City has approved an initial claim, benefits shall not be terminated or suspended without a determination by a neutral hearing examiner, selected by the City. In the event the City seeks termination or suspension of benefits, the City shall provide the claimant at least thirty (30) days notice of hearing in which the employer bears the burden of proof.

**C.   Appeal**

Any decision of the hearing examiner shall be appealable to the Court of Common Pleas, under the terms of the Local Agency Law.

H. The City shall establish a cost of living clause with the Police Pension Fund which will provide an annual cost of living adjustment for police officers hired, after January 1, 1981 who retire on or after January 1, 2001. The adjustment will provide that the pension of a retired officer shall not drop below 50% of the

20

B. If any provisions of this contract or any application of the agreements to any officer or group of officers is held to be contrary to the law, then such provisions application shall not be deemed valid and subsiding, except to the extent permitted by law, but all other provisions or application shall continue in full force and effect; provided, however, upon such invalidation the parties signatory hereto agree to immediately meet to renegotiate such parts or provisions affected.

C. Copies of this contract shall be reproduced at the expense of the City within thirty (30) days of the signing of the contract. The F.O.P. shall distribute copies of the contract to all officers. The copies of the contract shall be reproduced in booklet form.

D. The City and the F.O.P. agree to take no action in violation of, or inconsistent with, any provisions of this contract while the contract is in effect.

E. Officers shall be permitted to examine their official personnel file at reasonable times and with reasonable advance notice. The contents of said personnel files shall be subject to the grievance procedures. The officer's personnel file shall not be open to anyone except members of the administration.

F. An officer who requests a day off, a change of scheduled workdays or a change in his shift shall be granted the request provided the following conditions are met:

(1) The officer requesting the change must make the necessary arrangements to have his shift or job covered by a replacement officer from within his unit.

(2) The replacement must be able to fully perform all required duties of the officer being replaced. An officer's qualifications and ability to perform the work shall be determined by the Chief.

(3) Neither the requesting officer nor the replacement officer shall be on pre-picked and/or scheduled vacation during the period of the change.

G. Officers shall be required to maintain (at no cost or expense to the City) a telephone in their residences. The phone numbers shall be given to the Chief of Police who shall maintain their confidentiality and who shall use them only in emergency.

H. Except situations for the vacation days scheduled in November and court time, which may occur during that scheduled vacation period, no benefits as provided under this contract shall be stacked, pyramided or duplicated.

I. Officers residing within a fifteen (15) mile radius of the Erie City Hall shall be considered to meet the City's statutory residency requirements.

J. Effective January 1, 1994, the existing pension service increment cap shall be increased from a maximum of $100.00 per month to a maximum of 300.00 per month.

a. The Council of the City of Erie is required by Act 111, Section 7, to amend Ordinance 9-1962, Article 143, to conform to this provision.

23

---

appeal. The Director of Human Resources shall render a decision within five (5) workdays of the hearing in writing.

Step 4: In the event the grievance has not been satisfactorily resolved at Step 3, an appeal may be initiated by the officer, or the F.O.P., by serving upon the Director of Human Resources a notice in writing of the intent to proceed to arbitration within seven (7) calendar days after the receipt of the Step 3 decision.

a. The arbitrator is to be selected by the parties jointly within seven (7) calendar days after the notice has been given. If the parties fail to agree on an arbitrator, either party may request the American Arbitration Association to assist them in selecting an arbitrator using the procedures of the American Arbitration Association.

b. The arbitrator shall neither add to, subtract from nor modify the provisions of this agreement or the arbitration awards. The arbitrator shall confine himself or herself to the precise issue submitted for arbitration and shall have no authority to determine any other issues not so submitted to him or her.

c. The decision of the arbitrator shall be final and binding on the parties. The arbitrator shall submit his decision in writing within thirty (30) days after the record is closed.

d. All fees and expenses of the arbitrator and the hearing shall be divided equally between the parties. Each party shall bear the cost of preparing and representing its own case. Either party desiring a record of the proceeding shall pay for the record and make a copy available without charge to the arbitrator.

Section 3

The failure of either party to appear at any scheduled proceeding under this Article shall not be cause for delay or postponement, and such proceedings shall continue as though the absent party were present. Failure of a City representative to meet or issue a decision within the time limits set forth in this procedure shall entitle the grievant to proceed immediately to the next step or arbitration as the case may be. The time limit specified in the preceding sections may be extended by agreement of both parties.

Section 4

Any award of an arbitrator within his jurisdiction and any decision at any step, which is not advanced to the next step is final and binding and the parties agree to immediately comply with such determination.

ARTICLE XVI

MISCELLANEOUS PROVISIONS

A. All terms and conditions encompassed by the prior agreement that are not altered by this award shall remain in full force and effect. All demands made by the parties that are not contained in this award are rejected.

22

K. All existing benefits not modified by this agreement shall remain as is.

### ARTICLE XVII

### SAFETY OF OFFICERS/DEPARTMENT EFFICIENCY

A Safety Committee consisting of two (2) members appointed by the F.O.P. and two (2) members of the Administration appointed by the Mayor shall deliberate and advise concerning matters which may relate to the safety of offices.

The parties hereby agree:

A. No officer will knowingly be dispatched to a volatile situation, until the officer in question is provided with professional assistance.

B. All vehicles and equipment shall be subject to inspection and any major mechanical deficiencies will be rectified before the vehicle or equipment is returned to service.

C. The committee will remain alert to any and all procedures, methods, and equipment, which may emerge in the law enforcement field in the future.

D. All officers will b required annually during off duty hours to participate in scheduled police department sessions on the target range (maximum four (4) hours). All officers will be scheduled during duty hours a practice session on the department target range.

E. An adequate number of effective bullet-proof vests and riot helmets shall be maintained for issuance to and protection of officers on those occasions when their use is indicated.

### ARTICLE XVIII

### TRANSFERS

1. All intra-departmental transfers shall be in accordance with the following regulations:

(a) All open positions that are to be filled shall be posted for a period of not less than ten (10) consecutive days prior to being filled.

(b) A copy of the job code and organization chart shall be posted on all bulletin boards and the administration shall update the job code annually with any changes requiring prior consultation with the F.O.P.

(c) All officers desiring to bid for such job or jobs shall address their memorandum to the Chief of Police within that time. After the closure of the posting period, the City shall award the position in accordance with the physical fitness, ability, and efficiency of the officer to perform the job, it being understood that departmental seniority shall be the governing factor where the physical fitness, ability and efficiency to perform the job is equal. Because of the City's responsibility for the operation of the police force, it

24

shall be the sole judge of a person's physical fitness, ability and efficiency for the job provided, however, that the City shall not act in an arbitrary, capricious, or discriminatory manner. The City has a thirty (30) day period to decide if the officer shall remain in the position.

The City shall provide an explanation and basis for its award to any unsuccessful bidder with more seniority than the successful bidder upon written request by said unsuccessful bidder.

The City shall post a list of all applicants prior to awarding the position.

(d) The Chief and the commander of the division shall agree on the top three applicants and then interview those applicants with the President of the F.O.P. or designee, being present at the said interviews.

(e) The provisions of this Article shall apply to transfers only.

### ARTICLE XIX

### EDUCATIONAL OPPORTUNITIES

Specialized schools or training programs will be offered first to officers currently performing jobs relating to the particular training. The chief or his designee, will exercise managerial prerogative when selecting officers to attend a specialized school or training program. General training will follow the posting process below:

Opportunities for general training shall be posted for a period of ten (10) days and shall be bid upon by any interested Class A or above member of the department. The City shall offer as many schools or seminars as possible.

### ARTICLE XX

### TERMINATIONS

This agreement shall remain in force and effect until and including the thirty-first (31st) day of December 2001. It shall automatically be renewed from year to year thereafter unless either party shall notify the other in writing, pursuant to Act 111, that it desires to modify or terminate this agreement. In the event that such notice is given, negotiations shall begin no later than fifteen (15) days thereafter.

### ARTICLE XXI

### NON-DISCRIMINATION

It is the continuing policy of both the City and the F.O.P. that neither shall discriminate against any employee because of race, color, religion, sex, national origin or age.

25

## APPENDIX A

### BASIC ANNUAL SALARY SCHEDULE

| Class. | 1/1/98 +1.5% | 1/1/99 +1.5% | 1/1/00 +2.0% | 1/1/01 +3.0% |
|---|---|---|---|---|
| Start | 22,412 | 22,749 | 23,203 | 23,900 |
| 12 mos. | 26,148 | 26,540 | 27,071 | 27,883 |
| 24 mos. | 29,862 | 30,330 | 30,937 | 31,865 |
| 36 mos. | 33,617 | 34,121 | 34,804 | 35,848 |
| 48 mos. | 37,533 | 38,096 | 38,858 | 40,024 |
| Corp. | 38,098 | 38,670 | 39,443 | 40,626 |
| Sgt. | 39,220 | 39,808 | 40,604 | 41,822 |
| Lt. | 40,713 | 41,324 | 42,150 | 43,415 |

27

## ARTICLE XXII

### AGENCY SHOP

#### Section 1

Any bargaining unit member who is not a member of the Fraternal Order of Police shall, as a condition of employment, pay to the local on a monthly basis a fee which is one dollar ($1.00) less than the regular monthly dues of a member. Any police officer who elects not to join the Fraternal Order of Police Haas Memorial Lodge No 7 shall, within thirty (30) days after hire, as a condition of employment, pay to the local on a monthly basis a fee which is one dollar ($1.00) less than the regular monthly dues of a member.

#### Section 2

The Fraternal Order of Police shall hold the City harmless from any and all causes of action and/or liabilities whatsoever, which arise or may arise, from any action or actions, the City takes to comply with the terms of this provision.

### ARTICLE XXIII

### MANAGEMENT RIGHTS

Nothing within this collective bargaining agreement shall be construed to waive any of the City of Erie's management rights, unless specifically restricted by a term or provision of this contract.

IN WITNESS WHEREOF, the parties hereto have set their hands for the first day of January, 1998.

FOR THE CITY OF ERIE                    FOR HASS MEMORIAL LODGE #7

Joyce A. Savocchio
Mayor

Jeffrey J. Annunziata
President

Brenda A. Pundt
City Controller

Paul J. DeDionisio, Jr.
Chief of Police

Genevieve M. Putman
Director of Human Resources

26