IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| Plaintiff | : |
| | : |
| | : C.A. NO. 04 – 04 ERIE |
| v | : |
| | : JUDGE McLAUGHLIN |
| CITY OF ERIE, PENNSYLVANIA | : |
| | : |
| Defendant | : |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS**

FACTUAL AND PROCEDURAL SUMMARY

This particular dispute between the parties centers upon the proposed list of women applicants for Individual Relief submitted by Plaintiff on September 8, 2006, pursuant to the Consent Decree provisionally approved by the Court on March 10, 2006, and confirmed after initial Fairness Hearing on June 16, 2006. The Decree provided for the identification of up to five women who had failed the City of Erie's Physical Agility Test for police officer applicants in the years 1996, 1998, 2000 and 2002 as Priority Hires to address the shortfall of women who had been hired as police officers while the Agility test was used; as the test was determined by this court to have had an unlawful disparate impact on women. The Consent Decree also provided for a Settlement Fund of $170,000.00 to be used for the payment of Back Pay to women who would likely have been in a position to be hired but for the discriminatory test.

Plaintiff submitted a list of 24 women deemed eligible for both the Priority Hiring, and Monetary Relief; as well as 22 women eligible for monetary relief alone. Plaintiff

identified one applicant from the 2002 pool who would receive $22,035.00 and Priority Hiring, but every other approved woman is proposed to be given an equal payment of $3,288.00; thereby exhausting the fund.

Defendant questioned the basis on which many of the proposed relief awards were determined by Plaintiff, and requested information as detailed in the Motion and attachments. Essentially, the dispute boils down to a difference of perceptions as to the nature and purposes of the Settlement Fund as well as the proper level of scrutiny of the individual applicants for relief. Defendant will address the precise issues in order of descending prominence from its perspective.

### I. THE SETTLEMENT FUND IS DESIGNED TO PROVIDE A MEASURE OF BACK PAY TO WOMEN WHO ACTUALLY MIGHT HAVE BEEN HIRED, NOT AS UNLIQUIDATED DAMAGES FOR ANY NUMBER OF APPLICANTS WHO ARE MERELY NOT DISQUALIFIED FROM POLICE WORK.

The Settlement Fund amount of $170,000.00 was calculated by Plaintiff after negotiation with Defendant and the Court, and was designed to reflect the possibility that, in the years from 1996 through 2002, as many as five women failed the Physical Agility Test who actually would have been hired had a non-discriminatory physical test, or no such test, been given.

The Plaintiff, along with the Equal Employment Opportunity Commission, has a long history of entering into Consent Decrees to address employment discrimination under Title VII of the Civil Rights Act, 42 U.S.C. 2000e-6; and, because there is often a difficulty in extrapolating the conditions which would have existed for the victims of a discriminatory employment decision in the past; a proportional sharing of available funds is often the most equitable method to achieve the purposes of a Title VII award; which is to place victims of discrimination in the place they would have been but for the unlawful

action, and to dissuade such future actions by the employer.

Courts have sometimes noted that Title VII back pay distribution awards among large numbers of claimants are valid even with though there is a risk that a "small number of undeserving individuals might receive back pay" *Segar v. Smith* 738 F. 2d 1249 (CADC), *cert. denied* 105 S. Ct. 2357 (1984). In *Segar,* the Court noted the general requirement that any Title VII relief must benefit only actual "victims of discrimination;" defined as persons who actually suffered an adverse employment decision as a direct result of unlawful discrimination; but approved the imposition of class-wide back pay to part of the Plaintiff's group of Black employees denied promotions, rather than the individual hearings preferred in the Supreme Court's ruling in *Teamsters v. United States* 431 US 324 97 S. Ct. 1843 (1977). The court determined that any attempt to recreate the employment histories in such individual hearings would invoke criteria such as "supervisory evaluations, breadth of experience, and disciplinary history…(which) were themselves found to be tainted with illegal discrimination." 738 F. 2d at 1290. Notwithstanding its approval, the decision noted that the Supreme Court had very recently issued its ruling in *Firefighters Local Union No. 1784 v. Stott* 104 S. Ct. 2576 (1984) which re-emphasized the necessity that recipients of Title VII relief awards including backpay must be actual victims of discrimination. As will be argued below, the City asserts that the examination of the applicants for relief in this case is a much more objective and limited task than in *Segar;* as the primary basis for hiring police officers in the City is a non-discriminatory, rank-ordered Civil Service test; rather than the PAT. A number of the applicants actually took that test, and virtually all of the others had the opportunity to do so in 2002.

**The City's right to object to monetary awards is meaningless if the Settlement Fund cannot be reduced rather than simply reallocated.**

Paragraph 55 of the Consent Decree provides that the Defendant may make well-founded objections to any of the Relief Awards; and that an objection to Priority Hiring or Monetary Relief is well-founded if, at the time a claimant failed the PAT, "the Claimant was *not qualified* for the position of entry-level police officer in the City's Bureau of Police using *the lawful, objective hiring criteria in use by the City at that time*" (emphasis added).

The same paragraph also provides that, in the event any objection to the Relief Awards List is well-founded, the Court "shall amend it to adjust the amount and nature of the relief to be awarded to the Claimants consistent with such finding, while maintaining, to the extent possible, the proportionate shares of the Settlement Fund awarded to all other Claimants."

Nothing in this language compels the court to redistribute the monetary awards of disallowed claimants among the remaining ones. In the event that a number of claimants' monetary awards are disallowed, the remaining awards can be left undisturbed, so that the proportional shares of the reduced fund remain intact. Paragraph 64 of the Decree contemplates the return of undistributed funds to the City, albeit while focusing on unclaimed or undeliverable shares; but the principle that part of the Fund can so revert to the City is thereby recognized; and such an interpretation is most appropriate to the facts and circumstances of this case.

If the City has no ability to reduce the ultimate size of the Fund by objecting to monetary relief awards; a position it made quite clear during the negotiation of this

4

agreement with the Court, what would be the reason for allowing such objections to be made?

**II. THE PRESUMPTIVE ENTITLEMENT OF APPLICANTS IN THE RELIEF PHASE OF A DISPARATE IMPACT CASE IS NOT IDENTICAL TO THE DEFENDANT'S SHIFTED BURDEN OF PROOF IN THE LIABILITY PHASE, AS THE PLAINTIFF RETAINS A BURDEN TO PROVE DAMAGES**

The primary legal authority establishing the presumption that applicants for relief in the second phase of a Title VII case are entitled to relief is the Supreme Court determination in *Teamsters v. United States* 431 US 324 97 S. Ct. 1843 (1977), a case involving intentional race discrimination against minority truck drivers who were diverted from higher paying long-haul routes. Citing *Franks v. Bowman Transportation Co.* 424 US 747, 96 S. Ct. 1251, at note 32, the Court in *Teamsters* declared that even some non-applicants for the position of long-haul truck driver (having been discouraged from applying by the intentional racial discrimination) might still be eligible for back-pay relief unless the evidence indicated a lack of *qualification* for the position; the burden to overcome a presumption of qualification being the employer's.

Plaintiff utilizes this principle to concentrate on the absence of *disqualification* factors as to an individual applicant for relief, while Defendant notes the distinction between the *Teamsters/Franks* situations of intentionally disparate racial exclusion of persons possessing the primary qualifications of truck drivers for better-paid positions from the situation presented here: applicants who failed a secondary physical screening test who later had the opportunity to take, or actually did take, the Civil Service test in 2002, which has always been the primary police selection device. Plaintiff presumes that all those who were prevented from taking the Civil Service in previous years by PAT

failing would have passed and scored highly on the test; and discounts actual failures or low passing scores from those who actually took the 2002 test; proposing monetary and/or hiring relief to 9 such applicants who would never have been hired in 2002 based on their test scores.

The case law applying *Teamsters* has consistently repeated the requirement that only actual victims of discrimination should share in Back Pay or other relief. In *Evans v. City of Evanston* 881 F. 2d 382 (7th Cir 1989), the Court, in dealing with an agility test for firefighters found to be gender-discriminatory, remanded the decision because of its then-wrongful shift of the burden of proof to the defendant City—this was in the period when *Ward's Cove Packing Co. v. Antonio* 109 S. Ct. 2115 (1989) had not yet been overridden by the 1991 Civil Rights Act amendments. Regardless of the obsolescence of that liability jurisprudence, the *Evans* court also made reference to the potential back-pay award to females who failed the agility test, and noted that the "make whole" relief in Title VII cases proceeding from the line of *Ablemarle Paper Co. v. Moody* 422 U.S. 405, 95 S. Ct. 2362 (1975) and *Franks v. Bowman Transportation Co.; supra* :

"has reference to cases where it is reasonably clear that, had it not been for the discriminatory behavior, the plaintiff would have got (or retained) the job or other employment benefit in issue…As only 1.2% of the applicants who passed the Evanston fire department's physical agility test were actually hired, what the class members lost was not a job but a long-shot chance at a job. They will be restored to the place they would have occupied if they pass a new physical agility test approved by the court. Depending on their performance on that test *and on the other tests required of applicants,* they may eventually be in a position to show that but for the unfair scoring of the 1983 test they would have been hired in 1983, and if so, they can then claim additional backpay." 881 F. 2d at 386 (italics added).

The 1991 Civil Rights Act amendments did not affect the nature or scope of the *Ablemarle/Franks/Teamsters* jurisprudence regarding applicants for relief in the second phase of a Title VII case. The analysis of the presumption of relief entitlement in each

6

such case is subject to the particularities of each situation; and courts have consistently so recognized.

In *E.E.O.C. v. Mitsubishi Motor Mfg. of America, Inc.* 990 F. Supp. 1059 (C.D. Ill 1998), a the District court discussed the problems posed by the *Teamsters* presumption of liability in the context of a pattern-or-practice Title VII sexual harassment case involving numerous Plaintiffs. The court stated that the presumption "does not work at the individual relief phase of a sexual harassment case" 990 F. Supp. 1059 at 1077. This is due to the subjective nature of the proof which each plaintiff must provide that he or she was actually harmed by the pattern or practice of such conduct. The court did allow that the Phase I finding of objective discrimination "may be applied to Phase II to relieve an individual of her *prima facie* burden to prove that element. The remaining proof that the conduct was "unwelcome" to the individual must be presented in order to meet such person's burden of proof.

In *Carter v. Shop-Rite Foods, Inc.* 470 F. 2d Supp. 1150 (D.C.N.Tex. 1979), a post-*Teamsters* decision, the court engaged in a detailed analysis of the claimant's presumption in a Phase II Title VII case involving women who were denied promotions in a gender-disparate manner. The lack of a formal promotion application procedure was both a hindrance to analysis as well as part of the discrimination problem. The court commenced its review of the individual claimants by noting, under *Teamsters/Franks,* the initial burden of the claimants to present evidence of their actual interest in general qualifications for promotions, and proceeded to evaluate any legitimate reason proffered the employer to establish that gender discrimination was not the determinative factor in her failure to be promoted.

All of the *Carter* claimants were employees of Shop-Rite and the issue was qualification for promotion to a management position in a supermarket. The threshold for those claimants to prove their essential qualifications for such promotions was not a high one under such circumstances, but the court reviewed them carefully, disallowing back pay for those who did not appear to testify and present themselves for the employer's cross-examination, and allowing several claims in which the employer's proffered reasons for non-promotion were insufficient.

In *Armstrong v. Charlotte County Board of Commissioners* 273 F. Supp. 2d 1312, *affirmed* 2004 U.S. Lexis 27830; *certiorari denied* 2005 U.S. Lexis 2487 the Florida Middle District; citing *EEOC v. Joe's Stone Crab, Inc.* 15 F. Supp. 2d 1364, noted that, in a Title VII case at the relief phase:

> "The burden of proof is on the Plaintiff to prove her damages…
> However, even where defendant fails to refute plaintiff's evidence, this Court, in the exercise of its duty to render an equitable award of damages for front pay, must consider what is fair and reasonable under the circumstances. 'A Title VII damage award should make the claimant whole, not confer a windfall.'" 273 F. Supp. 2d at 1317.

Such considerations, of course, apply equally to back pay.

In a very relevant post-*Teamsters* decision, the Eighth Circuit ruled in *Donnell v. General Motors Corp.* 876 F. 2d 1292 (1978), that the Plaintiff, who successfully challenged certain educational requirements for an apprentice hiring program as racially discriminatory in Phase I was not entitled to a back pay award without further evidence of his qualifications. Significantly, the court stated:

> "The educational requirements, which Donnell has successfully challenged, were only preliminary requirements for entry into the program. Before an applicant was accepted, *further testing, screening and rating procedures were also required* under the GMC-UAW Standards Apprentice Plan. Donnell has not challenged these further requirements as discriminatory. Thus, before Donnell is entitled to

8

back pay, he must establish that he has satisfied the further requirements." 876 F. 2d at 1301 (italics added).

**Plaintiff cannot presume Civil Service passage in the PAT-failed years, especially with applicants who actually took the 2002 test.**

As in *Donnell v. General Motors*, the City of Erie's Physical Agility Test was merely a preliminary requirement for Police Officer hiring. The primary selection of employees was the non-discriminatory Civil Service examination, required by state law at 53 P.S. 39401 *et seq.,* which produces a list of rank-ordered candidates every two years. This is the list of those who are "qualified" objectively for police hiring, absent any further disqualifying information or findings from a background check, physical exam and psychological evaluation performed on those whose names are submitted for actual hiring.

As in *EEOC v. Mitsubishi,* and *Evans v. City of Evanston, supra;* the additional factors bearing on the Title VII claimants' eligibility for back pay; objective here and in *Evans* rather than subjective as in *Mitsubishi*, strongly suggest the need for a more thorough analysis of the claimants' actual *qualifications* which would place them on the prospective hiring list; rather than extrapolating the absence of the secondary or more remote *disqualifying* factors as Plaintiff has done.

Certainly the claimants in this case should not be entitled to less scrutiny of their backpay claims than were the incumbent employees seeking compensation for discriminatorily-denied promotion in *Carter v. Shop-Rite, supra.*

While Plaintiff correctly notes that PAT-failing women (and men) were not permitted to take the subsequently-given Civil Service test in 1996, 1998 or 2000; all applicants were permitted to take it in 2002, when it was placed ahead of the PAT.

Nothing in *Teamsters; Franks* or any case decided thereunder permits the Plaintiff to presume that PAT-failing women who merely present no obvious disqualifying features at the time of PAT-failure would have passed the primary Civil Service test in the PAT-failed year, or scored sufficiently well to have been in the zone of hiring probability. No reported decision permits such an inference of successful passage of a formalized, rank-ordered and mandatory employment test as the Civil Service police officer test, in a Title VII individual relief award simply because a claimant failed a secondary, discriminatory selection device.

It is telling, indeed, that Plaintiff appears to have identified only one woman, Cheryl Ann Frey, whom they consider to have been a likely hire from the 2002 list but for the PAT-failure; apparently due to her Civil Service score ranking. Only this applicant is proposed for a full allotment of back pay ($22,035.00) calculated (from previous correspondence between the parties) as six months of police officer pay, with interest from the 2002 purported hire date. Every other candidate deemed worthy of monetary relief receives the same amount of $3,288.00, which appears to Defendant as more of an unliquidated damages distribution to a class of disappointed applicants; some of whom either failed outright or passed but scored prohibitively low on the 2002 Civil Service test. Title VII back pay relief is simply not meant to be awarded in this manner.

**At the least, the year 2000 PAT-failing applicants should have been expected to take the 2002 Civil Service test to be considered for any relief; and all applicants should be required to prove equivalent education or experience for back pay relief.**

While Plaintiff's assertion that PAT failings in 1996 through 2000 effectively short-circuited the prospect of hiring by preventing the women from taking the Civil

10

Service test in that year has some validity, there is no sound basis to leap to the conclusion that the City must somehow prove that all such women, even those who chose to take the 2002 test and failed it, would have so failed in the PAT-failing year to deny relief. Defendant offers alternatives to such an approach which reflect the applicable case law and principles of Title VII back pay relief in the context of the actual hiring process for City of Erie police officers.

Those women who presented themselves in the year 2000 for the PAT, having filed applications showing the preliminary qualifications of age and residence would be presumptively willing to be placed on the Civil Service list for its full two-year span of operation in hopes of being hired. Defendant asserts that any PAT-failing woman in 2000, particularly a close failure, who chose not to take the Civil Service test which was offered well before the expiration of the 2002 hiring list, and prior to the rearranged and simplified 2002 PAT, had effectively lost interest in being a police officer. In fact, Claimant Fatima Gibbs, who filed a Pennsylvania Human Relations discrimination claim in 2001, having barely failed the 2000 PAT, was specifically encouraged in conciliation proceedings to try again in 2002. She chose not to, yet Plaintiff proposes her for monetary relief.

Unlike the *Teamsters* situation, where intentional racial discrimination may have dissuaded applicants from trying again, the City's PAT was found to be an unintentionally gender-disparate test which was revised every two years at least partially in effort to pass more female applicants. Defendant has a right to question any of the 2000 PAT-failing women proposed for relief who did not take the 2002 civil service test why she had not done so.

11

This inquiry may be somewhat less appropriate for the 1998 or 1996 PAT-failing women who declined to return take the 2002 test, given the time span and the prospect that they had settled into other employment elsewhere. Nevertheless, additional questions as to their actual qualifications equivalent to a high passing score on the Civil Service test such as education, relevant job experience, similar tests taken, and actual career motivation at the time of PAT failure are certainly legitimate areas of inquiry to determine the likelihood that any such applicant possessed the primary qualifications for police hiring at that time.

The five (5) PAT-failing women who passed the 2002 Civil Service exam possess the essential qualifications for the Priority Hiring list, although the Defendant contends that none of them would have yet been hired based upon their score ranking; not even Ms Frey, because of the number of PAT-failing men who ranked ahead of her and would have to have been offered employment before her. None of them, then; can be entitled to Back Pay. Several of the men actually hired from the 2002 list would not have been offered employment if all the PAT failures are added back in to the civil service list.

Those who failed the 2002 Civil Service test cannot be entitled to any relief; as the presumption in their favor has been clearly rebutted and replaced with one of its own. Plaintiff is aware that the Civil Service exam given each time to police applicants is produced by a professional testing service, and involves the same types of subject matter in each test year. A failure or low passing score in 2002 can most logically be extrapolated back to the previous PAT-failing year, as opposed to Plaintiff's stated position that such a prior year failure cannot overcome the presumption in favor of any claimant. Only those claimants who have passed or reasonably can be considered likely

to have passed the Civil Service examination in the year of PAT failure can be entitled to any Individual Relief; and the monetary relief should be limited only to those whose prospects of actual hiring were real. This primary, objective qualification cannot be ignored or presumed to exist on minimal information.

**III. THE INFORMATION REQUESTED BY DEFENDANT IS NECESSARY TO EVALUATE THE QUALIFICATIONS OF THOSE WHOM PLAINTIFF HAS IDENTIFIED AS ENTITLED TO MONETARY OR PRIORITY HIRING RELIEF.**

The previous arguments make clear the Defendant's need for sufficient information to evaluate the claimants submitted by Plaintiff for individual relief. Plaintiff alone knows what each applicant revealed about her experience, education and background which may evidence her possession of sufficient knowledge and skill to have scored highly on the civil service exam.

Which, if any, of these applicants has studied criminal justice, worked in law enforcement or a related field, taken other civil service tests for public safety jobs, scored well on the SAT's or other standardized tests, or otherwise demonstrates a true basis to extrapolate or assume that she would likely have scored sufficiently well on the Erie civil service test in the year she failed the PAT to have been hired? To this point, defendants have no basis to identify any such claimant entitled to back pay.

Plaintiff should be more than willing to provide such information if it exists; yet chooses to stand on its claims of work product privilege in declining to provide this level of information. Instead, Plaintiff wants to give monetary relief and priority hiring to four women who actually failed the 2002 Civil Service test; asserting that the City "can't prove they would have failed in a previous year!"

While the formalities of discovery under Rule of Civil Procedure 26 must be

13

applied in an abbreviated manner in the context of this end-stage Individual Relief proceeding, the considerations applicable to protecting Trial Preparation or other privileged materials must also be analyzed in such a truncated context. The Consent Decree delegates to Plaintiff the task of evaluating the Relief applicants, and submitting the list for Defendant's review and objection. Plaintiff is in sole possession of the completed questionnaires and interview notes of such applicants; and, as provided by Rule 26 (b) (3) and (5), is certainly able to provide this necessary information while redacting any "mental impressions, conclusions, opinions or legal theories" of counsel; to the extent that Rule 33 (c) might protect such material in this context.

Rule 26 (b) (3) provides that information in the possession of the adverse party is discoverable if the party seeking discovery "has substantial need of the materials in the preparation of its case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Certainly, the Defendant needs to evaluate the specific qualifications of such relief applicants, and, having been dissuaded from making any direct contact with them by the Consent Decree itself, cannot be expected to attempt to interview the applicants to discern the presence or absence of essential qualifying factors any of them possesses.

Rule 26 (b) (5) specifically requires a party raising any type of privilege against disclosure "must make the claim expressly" and provide sufficient information about the withheld material to "enable other parties to assess the applicability of the privilege or protection." Plaintiff has not at this point stated why it believes any privilege should apply to the information it was delegated to collect from the applicants.

Truly, what does Plaintiff have to conceal at this point regarding these applicants'

"objective qualifications" for police work? Plaintiff's suggestion that Defendants may scour the driving records and other applicable public information for negative information does not address the need to evaluate the *qualifications* as opposed to the *disqualifications"* of these women; as the burden to prove entitlement to back pay or priority hiring remains that of the claimants, acting through Plaintiff.

**CONCLUSION:**

The parties have a significant dispute as to the nature of the Settlement Fund; the presumptive entitlement of the applicants for individual relief, and the nature and scope of the information Plaintiff must provide to Defendant. Defendant believes it is lawfully entitled to the information in order to determine which, if any of the applicants for relief, are entitled to monetary relief, and who, other than the five women passing the 2002 Civil Service test, should be placed on the Priority Hire list of five.

                        Respectfully Submitted,

                        OFFICE OF ERIE CITY SOLICITOR
                        626 State Street, Room 505
                        Erie, PA 16501
                        (814) 870-1230

                        By: /s/: Gregory A. Karle, Esquire
                             Gregory A. Karle, Esquire
                             PA ID 32533

                        By: /s/:Gerald J. Villella, Esquire
                             Gerald J. Villella, Esquire
                             PA ID 32814

                        By: /s/: Kenneth A. Zak, Esquire
                             Kenneth A. Zak, Esquire
                             PA ID 23992