IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| PLAINTIFF, | CIVIL ACTION NO. 04-4   ERIE |
| V. | JUDGE MCLAUGHLIN |
| CITY OF ERIE, PENNSYLVANIA, | |
| DEFENDANT. | (ELECTRONICALLY FILED) |

**PLAINTIFF UNITED STATES' MEMORANDUM
IN RESPONSE TO DEFENDANT'S MOTION TO COMPEL**

**I. INTRODUCTION**

On June 15, 2006, following a fairness hearing on the terms of the Consent Decree ("Decree"), the Court entered the Decree "to resolve all relief phase issues without further contested litigation." Decree, ¶ 5. Entry of the Decree began the claims process - the process of determining which of the victims listed on Appendix A to the Decree will receive individual relief, as well as the nature and amount of relief each will receive.

The Decree sets forth the parties' respective obligations during the claims process, as well as the procedures the parties must follow. Among other things, the Decree specifies what information and documents each party must provide to the Court, to the other party and to the Claimants prior to the Fairness Hearing. In addition, the Decree specifies what objections the Claimants and the City may make to the United States' relief determinations and the standards the Court will apply in considering the objections.

As the Court recognized in entering the Decree, one of the principal purposes of the settlement it embodies was to avoid the expense and delay necessary to conduct remedies-related discovery and trial. Accordingly, the provisions of the Decree governing the claims process are

fundamental to the Decree, and must be given full effect by the Court. Thus, the United States'

"discovery" obligations - like all of its obligations under the Consent Decree - are governed by

the Decree rather than the Federal Rules of Civil Procedure.

As established below, the United States has produced all information required by the

Decree – and more.[1] For that reason alone, the Court must deny the City's Motion to Compel.

---

[1] To understand why the United States has little information to give the City, the Court need only review the City's Motion to Compel ("Motion"). Because the Decree states that the United States will make the relief determinations, on June 19, 2006, immediately following entry of the Decree, the United States requested in writing that the City provide information regarding the lawful, objective qualifications the City used during the relevant period, 1996 to 2002. Motion, ¶ 2; see Decree, ¶ 49. As the City admits, the City did not respond. Motion, ¶ 3. Left in the dark as to what facts would have rendered an applicant unqualified, the United States sought from the Claimants a limited amount of information (e.g., driving record and criminal history) that the United States believed would be relevant when and if the City ever told the United States what its qualifications were. By letter dated August 14, 2006, the United States reminded the City that the United States' relief determinations had to be filed by September 8, 2006, and again asked the City to provide the information the United States had requested on June 19, 2006. Motion, ¶ 3. The City finally responded on September 12, 2006, after the United States had filed the Relief Awards List, Motion, ¶ 6, but even then the City explicitly stated that the disqualifying factors it identified were not objective. Thus, the City knows that the United States has nothing "to conceal regarding [the Claimants'] 'objective qualifications' for police work." Brief in Support of Defendant's Motion to Compel Production of Documents ("Def. Brief"), pp. 14-15. The City has never disclosed what, if any, objective qualifications it used, so the United States sought only limited information from the Claimants and has given the City all the relevant information it has.

However, as the City's recent conduct illustrates, the United States does have good reason not to disclose to the City other, irrelevant information regarding the Claimants. Specifically, on October 2, 2006, the City mailed copies of Defendant's First Set of Objections, along with its attachments, to each of the women listed on Appendix A to the Decree. See Letter from S. Seeley to G. Karle and G. Villella, dated October 12, 2006 (filed as Attachment 1 with this memorandum). In the City's attachments was information regarding police officer applicants - including applicants who were hired as City of Erie police officers. The information disclosed included home addresses and telephone numbers as well as social security numbers. Upon learning from a Claimant that the City had made social security numbers and other personal information public, counsel for the United States immediately contacted the City Solicitor, who stated that Mr. Villella said that the disclosure was required by the Decree. Of course, the Decree requires no such thing. The United States then mailed a letter to all

2

However, the City's motion raises several other issues which must be decided now so that the Fairness Hearing on Individual Relief, scheduled to begin on November 20, 2006, can proceed as efficiently as possible and the parties and Claimants can prepare appropriately. Specifically, the City asserts that:  (1) under the Decree, if a Claimant is found ineligible for monetary relief following the Fairness Hearing, the portions of the $170,000 Settlement Fund allocated to her by the United States will revert to the City; (2) the United States must prove at the Fairness Hearing that a Claimant would have been hired if she had passed the PAT in order for the Claimant to receive monetary relief; and (3) the Decree allows the City to file objections to Claimants' eligibility for monetary relief.  In addition, the City asserts that a Claimant's score on the written examination administered by the City in 2002 is sufficient to prove that she was not qualified for hire in another year in which she took the PAT.[2]

In support of these assertions, the City refers to parts of only two provisions of the

_____

Claimants explaining that the City's mailing was not required by the Decree or ordered by the Court.  The United States later learned that, when a Claimant contacted the City to ask about the City's October 2 mailing, she was told that the City had sent her the materials to let her know that "the City is not going to pay her."  The United States is in the process of calling all of the Claimants to determine whether any additional action is necessary.  At least one Claimant has asked what remedy the City will provide, suggesting some form of identity theft protection. Given the situation described in the United States' October 12, 2006, letter, the United States has requested that the City not communicate with the Claimants without first informing the United States.

[2] The Decree required the City to file its objections by October 20, 2006.  Decree, ¶ 54. On that date, the City filed Defendants Detailed Objections to Relief Awards ("Detailed Objections").  The City agreed only that Cheryl Ann Frey, Sue Yong Rodgers, Mary Schmeisser or Cheryl Sidun-Lego are eligible for consideration for priority hire.  Otherwise, the City objected to each of the United States' determinations that a Claimant is entitled to relief. However, the Court's ruling on the issues identified above will dispose of all of the City's objections.  See n.8, infra.  In addition, the Decree required that any objections by Claimants to the United States relief determinations also be filed by October 20, 2006.  Decree, ¶ 52. Apparently, only one Claimant filed an objection.

Decree, Paragraphs 55 and 64, and it misrepresents the plain meaning of those provisions. See Def. Brief, p. 4. Knowing that its "interpretation" of the Decree cannot be squared with the Decree's language, the City provides a lengthy, garbled discussion of a number of cases, none of which involve interpreting a consent decree. The City thus refuses to acknowledge that it is the Consent Decree that governs the Fairness Hearing and the claims process leading to it.

The dispute between the parties is not, as the City asserts "a difference of perceptions." Def. Brief, p. 2. The City is not asking the Court to interpret the Consent Decree. The City is attempting to rewrite the Consent Decree in a manner designed to turn the Fairness Hearing on Individual Relief into a full relief phase trial, in an attempt to relieve itself of the obligation to pay $170,000 in monetary relief to victims of the City's discrimination - an obligation the City voluntarily assumed when it executed the Decree – by minimizing the number of Claimants found eligible for monetary relief.[3] Indeed, the City's brief and Defendant's First Set of Objections to Relief Awards List ("First Objections"), filed on October 2, 2006, make clear that this dispute is about money and nothing else. To prevent further attempts by the City to evade its obligations under the Decree, the Court must hold that no portion of the $170,000 Settlement Fund will revert to the City under any circumstances.

Indeed, the Court must reject each of the City's assertions and hold that: (1) the unambiguous language of the Decree requires that the entire $170,000 Settlement Fund be paid

---

[3] Contrary to the City's assertion in its brief, the purpose of the claims process is not to determine who is a victim. It is to determine the appropriate remedy to provide to each victim. All of the Claimants on Appendix A to the Decree are victims of discrimination. See Connecticut v. Teal, 457 U.S. 440, 448 (1982) (all women who failed test with unlawful impact are victims of discrimination because they have been deprived of an employment "opportunity," regardless of whether they would have been selected had they passed the test).

to Claimants, regardless of how many Claimants are found eligible for relief; (2) the Decree does not require that the United States establish that any Claimant would have been hired if she had passed the PAT; and (3) the Decree allows the City to object only to Claimants' eligibility for consideration for priority hiring relief, not monetary relief. In addition, the Court must hold that the 2002 written examination scores of Claimants who applied in 2002 and in an earlier year are irrelevant to their eligibility for relief for their earlier application.

## II. LEGAL STANDARDS

Despite the City's references to various cases, the issues raised by the City's motion are governed by the Consent Decree. The claims procedures, the objections process and the Fairness Hearing all were created by the Decree. To the extent that the terms of the Decree establish different obligations and standards than any rule, statute or case law that would have applied absent the Consent Decree, it is the Decree that governs.[4] As the Third Circuit has stated:

---

[4] Nonetheless, it should be noted that the cases cited by the City would be inapposite even in a litigated relief phase. None of them indicate that a shortfall/pro rata method is inappropriate in a case like this or that a Claimant is eligible for relief only if the United States proves that she would have passed the PAT. The City appears to cite Segar v. Smith, 738 F.2d 1249 (D.C. Cir. 1984) and Evans v. City of Evanston, 881 F.2d 382 (7th Cir. 1989), for the proposition that only "actual victims of discrimination," should share in back pay or other relief. Def.'s Brief, pp. 3, 6. However, the court in Segar upheld a class-wide backpay award and explicitly rejected the defendant's argument that the relief award had to be "perfectly tailored to award relief only to those injured and only in the amount of their injury." Segar, 738 F.2d at 1291. In Evans, Judge Posner's discussion of back pay, quoted by the City, was dicta, and the judge explicitly stated that he was not deciding the issue he commented on. Evans, 881 F.2d at 386. The City apparently cites Donnell v. General Motors Corp., 576 F.2d 1292 (8th Cir. 1978), to support the City's assertion that the United States must prove that the Claimants would have passed the Civil Service examination in order to be eligible for monetary relief. Def.'s Brief., pp. 8-9. Donnell is an individual (not class) case. Similarly, Armstrong v. Charlotte County Bd. of County Com'rs, 273 F. Supp.2d 1312, 1316-17 (M.D. Fl. 2003), is an individual disparate treatment, hostile work environment, and retaliation case involving the amount of front pay that should be awarded to the prevailing plaintiff, who requested six years of front pay. EEOC v. Mitsubishi Motor Mfg. of America, Inc., 990 F.Supp. 1059 (C.D. Ill. 1998), dealt with

> Although a consent decree is a judicial act, it has many of the attributes of a contract voluntarily undertaken . . . and a party to a consent decree, having made a free, calculated and deliberate choice to submit to an agreed upon decree rather than seek a more favorable litigated judgement, bears a burden which is perhaps even more formidable than had they litigated and lost.

United States v. Wheeling-Pittsburgh Steel Corp., 818 F.2d 1077, 1088 (3d Cir. 1987)(citations and internal quotations omitted), cited in Favia v. Indiana Univ. of Pennsylvania, 7 F.3d 332 (3d Cir. 1993). Regardless of whether the City finds itself unhappy with the terms of the Decree it chose to execute, the Court already has found the Decree to be fair, reasonable, adequate and consistent with the public interest. The Court's role now is to interpret the Consent Decree.

"A court should interpret a consent decree as written and should not impose terms when the parties did not agree to those terms." Holland v. New Jersey Dep't of Corrections, 246 F.3d 267, 281 (3d Cir. 2001) (responding to private plaintiffs' request that the court extend the term of a decree entered in a Title VII action). "Ordinarily . . . a court should confine its interpretation to the four corners of the decree and not try to divine its meaning from speculation about the purposes of the parties or the background legal regime." McDowell v. Philadelphia Hous. Auth., 423 F.3d 233, 239 (3d Cir. 2005). Further, the Third Circuit has directed:

---

a pattern or practice of sexual harassment and how the plaintiff would be required to prove the "subjective" element of a sexual harassment a case – i.e., that the purported victims found the conduct at issue subjectively unwelcome. The elements of a sexual harassment pattern or practice case have no relevance to this case. Finally, the City cites Carter v. Shop Rite Foods, Inc., 470 F. Supp. 1150 (N.D. Tex.), for the proposition that courts have scrutinized backpay claims and examined claimants' qualifications at individual relief hearings. Def.'s Brief, pp. 8-9. The case involved determining whether putative victims, who had not actually applied for promotion, would have applied and met the employer's general qualifications. The court required each claimant to testify that she wanted to be promoted and would have accepted a promotion. The defendant then had to prove that the claimant would not have been promoted, even absent discrimination. Id. at 1156. In contrast, in this case, we know that each Claimant: (1) applied; (2) was allowed to take the PAT because she met the City's minimum qualifications; and (3) failed the PAT.

6

> [W]e must not strain the decree's precise language or impose other terms in an attempt to reconcile the decree with our own conception of its purpose . . . Further, as consent decrees have many of the attributes of contracts, [a court must] interpret them with reference to traditional principles of contract interpretation . . . Thus, resort to extrinsic evidence is permissible, but only when the decree itself is ambiguous, although circumstances surrounding its formation are always relevant to its meaning . . . Our first task in interpreting a consent decree, therefore, is to determine whether its terms unambiguously cover the dispute in question. . . . Thus, <u>a provision in a decree is ambiguous only when, from an objective standpoint, it is reasonably susceptible to at least two different interpretations. . . . in light of the context in which the decree was signed and the specialized meaning of any words used.</u>

<u>United States v. State of New Jersey</u>, 194 F.3d 426, 430 (3d Cir. 1999) (citations omitted and emphasis added).  Moreover, "[w]hen the decree's language is not reasonably susceptible to two different meanings, the court must determine the parties' intent from the language itself, not by the subjective impressions of the parties."  <u>Id</u>. at 433.  A decree's "context" includes the district court's "comprehensive opinion approving the consent decree after a fairness hearing" and the fact that "[n]either party objected to the court's comments" in the opinion.  <u>Id</u>. at 431-32.

### III.  ARGUMENT

Because the City's other assertions flow from its argument that the Decree allows for a reversion of a portion of the $170,000 Settlement Fund to the City, this memorandum first addresses the City's assertion that the Decree allows such a reversion.  As established below, the City's argument ignores the unambiguous language of the Decree and must be rejected.

### A.  UNDER THE DECREE, NONE OF THE $170,000 SETTLEMENT FUND WILL REVERT TO THE CITY

Numerous provisions of the Decree prohibit a reversion of monetary relief to the City.  For example, after Paragraph 20 of the Decree defines the "Settlement Fund" as "the sum of One Hundred Seventy Thousand Dollars ($170,000)," Paragraph 25 states that the "Settlement Fund" – <u>i.e.</u>, $170,000 – and any interest on it "shall be distributed by the City at the direction of the

7

United States, as provided in Section X of this Decree." Nothing in Paragraph 25 allows for distribution by the City of less than $170,000.

In Section X of the Decree, Paragraph 58 provides for the first of four annual distributions from the Settlement Fund as follows: "[T]he United States shall . . . direct the City to distribute 1/4 of the total amount of the Settlement Fund." Nothing in Paragraph 58 allows the City to distribute less than 1/4 of the $170,000 Settlement Fund. Similarly, Paragraph 59 provides: "Each [of the remaining three annual] distribution[s] shall total 1/4 of the Settlement Fund." Nothing in Paragraph 59 allows the City to distribute less. In other words, the City must make four distributions, each of which will total 1/4 of the $170,000 Settlement Fund, regardless of the number of Claimants found eligible for relief.

According to the City, however, portions of Paragraphs 55 and 64 overcome this clear language. Paragraph 55 states that, following the Fairness Hearing on Individual Relief:

> The Court shall then approve the Relief Awards List as submitted [by the United States] or, if the Court finds that any objection(s) are well-founded, <u>shall amend it</u> to adjust the amount and nature of the relief to be awarded to the Claimants consistent with such finding, <u>while maintaining, to the extent possible, the proportionate shares of the Settlement Fund awarded to all other Claimants</u>.

(Emphases added). The City asserts that "[n]othing in this language compels the court to redistribute the monetary awards of disallowed claimants among the remaining ones. . . . [T]he remaining awards can be left undisturbed." Def. Brief, p. 4. That is nonsense. Paragraph 55 does not say that the Court "may or may not" adust the amount of monetary awards. It says the Court "shall" adjust the awards to the Claimants. Thus, if the Court finds that a Claimant should receive less monetary relief than indicated in the United States' Relief Awards List, the excess amount of monetary relief the United States allocated to her will be redistributed among the

other eligible Claimants.  If the Court could keep the other Claimants' amounts of monetary

relief the same, there would be no need for the "proportionate shares" language of the paragraph.

Indeed, it would be an odd way of saying that the amount of monetary relief the United States

allocated to Claimants subject to "well-founded" objections would revert to the City, and the

amounts allocated to all other Claimants would be left undisturbed.

The City also asserts that one sentence in Paragraph 64 of the Consent Decree, stating

that "[a]ny funds remaining in the account sixty (60) days after the Final Distribution shall revert

to the City," somehow "recognizes" as a "principle" that "part of the Fund can so revert to the

City," even though the City acknowledges that the sentence it cites applies only to unclaimed

checks.  See Def. Brief, p. 4.  To the extent that the City is asserting that the cited portion of

Paragraph 64 means that monetary amounts allocated by the United States to Claimants will

revert to the City if the Claimants are found ineligible for monetary relief, the City's assertion

violates the "elementary canon that a contract must be read as a whole, and that individual

provisions must be read in their context and not in a vacuum."  International Ass'n of Machinists

and Aerospace Workers v. U.S. Airways, Inc., 358 F.3d 255, 266 (3d Cir. 2004).  As established

previously, numerous other paragraphs of the Decree directly contradict the City's assertion.

Moreover, Paragraph 64 itself, read in context with the immediately preceding paragraph,

indicates that any reversion to the City will occur only after a fifth distribution to the Claimants,

made after the City has distributed 4/4 (i.e., all) of the $170,000 Settlement Fund.  Paragraph 63

provides that, after the four annual distributions are made, the City must give the United States a

final accounting of "the amount of funds remaining in the Settlement Fund account."[5] Because 4/4 of the $170,000 Settlement Fund will already have been distributed, the funds remaining will consist of interest earned on the Settlement Fund account and the amounts of any uncashed checks from the annual distributions. Paragraph 64 then provides that "the United States shall direct the City to distribute the remaining funds in a manner consistent with the purposes of this Decree . . . [and] the City shall make a Final Distribution, <u>distributing the remaining funds to Claimants</u> as directed by the United States." (Emphasis added.) Thus, even the interest on the Settlement Fund and the amount of uncashed checks will be distributed to the Claimants in the fifth distribution. Only any <u>de</u> <u>minimis</u> amount of interest earned after the final accounting and the amount of any checks uncashed by Claimants from the fifth distribution will revert to the City.

In summary, the unambiguous language of the Decree requires the City to pay out all of the $170,000 Settlement Fund regardless of the number of Claimants eligible for monetary relief. Accordingly, the Court must reject the City's assertion that it will recoup part of the $170,000 in monetary relief required by the Decree if the Court finds that any Claimant(s) the United States has determined are entitled to monetary relief are not. The number of eligible Claimants will have no effect on the amount of monetary relief the City must pay out under the Decree. This is one of the reasons that, as established in the following Section of this memorandum, the Decree does not allow the City to object to the United States' determinations regarding monetary relief.

---

[5] The Court should note the distinction between the "Settlement Fund" defined in Paragraph 25 of the Decree as "$170,000," and the "Settlement Fund <u>account</u>" - <u>i.e.</u>, the bank account into which the $170,000 is deposited.

10

**B. THE UNITED STATES' DETERMINATION THAT A**
   **CLAIMANT IS ENTITLED TO RELIEF IS PRESUMPTIVELY**
   **VALID, AND THAT DETERMINATION MAY BE CHANGED BY**
   **THE COURT ONLY IN THE CIRCUMSTANCES SPECIFIED IN THE DECREE**

The Court also must reject the City's assertion that no Claimant is entitled to monetary relief unless the United States proves she would have been hired absent the PAT. This assertion also is contradicted by the terms of the Decree. Moreover, the City's assertion would result in a full remedies phase trial – the very thing both parties sought to avoid by entering into the Consent Decree.

     **1.**    **The City's Assertion that the United States Must Prove that**
            **Claimants Would Have Been Hired If They Had Passed the PAT**
            **Is Meritless in Light of the Context in which the Decree Was Entered**

As the Court indicated when it entered the Consent Decree, absent the Decree, the parties would have had to litigate the entitlement of individual Claimants to relief:

> . . . a resolution of the damage phase would likely take many months, if not a year or more, to resolve, since the parties have not yet embarked on damage-related discovery, and since litigation of damage-related issues <u>would likely involve individualized challenges relative to various claimants' entitlement to relief</u>.

Transcript of 6/15/2006 Fairness Hearing and Order of Court, p. 39 (emphasis added). Clearly, the Decree was meant to avoid "individualized challenges relative to various claimants' entitlement to relief," as well as "damage-related discovery."

Moreover, the Court made clear that, even after discovery and trial, it would be impossible to determine which claimants would have been hired if the City had not used the PAT. As the Court explained, this is why the parties used a shortfall/pro rata method for purposes of the Decree:

> [I]t is impossible to determine with any certain[ty] which claimants would have been hired but for the City's use of the PAT. This is due both to the passage of time (in some cases up

to 10 years) since the discrimination occurred and also to the fact that those who failed the PAT were not permitted to proceed further in the application process.  As one objector has noted, multiple steps are involved in the City's selection of new police officers . . . <u>Thus, as to any particular claimant in this case, it may be unclear whether, for example, the individual would have successfully completed the written exam</u> or passed the required psychological [and] background check.

Nevertheless, the impossibility of pinpointing which claimants would have been hired in the absence of the PAT does not defeat the United States' claim for damages.  Instead courts have held that, where discrimination has been established but it is not possible to determine with reasonable certainty which claimants would have been hired absent the unlawful practice [it] is appropriate to use a "shortfall" method to calculate monetary relief.

<u>Id</u>. at pp. 41-42 (emphases added).  Similarly, later in its order, the Court stated:

I also find that it is fair to require the $170,000 monetary award to be divided among all eligible claimants . . .  If it were theoretically possible to determine with certainty whether a particular applicant[] who failed the PAT would have passed all the other steps in the City's selection process and been hired, then only those applicants who would have actually been hired would be eligible for monetary relief. . . .  [H]owever, it is impossible in retrospect to make such a determination because of the fact that the City did not allow individuals who failed the PAT to continue on in the selection process.

<u>Id</u>. at pp. 49-50.  Thus, the Court explained why the Decree does <u>not</u> require that the United States prove a particular Claimant would have passed the other steps (including the written exam) in the City's selection process and been hired.

The City made no objection to the Court's statements, which were made in court in the presence of counsel.  Thus, the City's assertion that the Decree requires the United States to prove that a Claimant would have been hired before the Claimant can receive monetary relief cannot be reconciled with the "context" in which the Decree was entered.  <u>See</u> <u>State of New Jersey</u>, 194 F.3d at 431-32 (decree's "context" includes court's "opinion approving the consent decree after a fairness hearing" and the fact that "[n]either party objected to the court's comments").

12

2.    **The City's Assertion that the United States Must Prove
      that Claimants Would Have Been Hired If They Had Passed
      the PAT is Contrary to the Language of the Decree Itself**

Moreover, Sections VII and VIII of the Decree set forth a comprehensive claims process.

See Decree, ¶¶ 47-55. The City cannot identify any provision in these Sections (or elsewhere)

stating that a Claimant is not eligible for monetary relief unless the United States proves that she

was otherwise qualified and would have been hired if she had passed the PAT. To the contrary,

the Decree presumes that the United States' relief determinations are correct.

Paragraph 48 of the Decree contains the only stated condition on a Claimant's eligibility

for monetary relief. Specifically, the Claimant must timely return a completed Interest in Relief

form to the United States. Paragraph 49 then states that the United States "shall determine the

amount of relief to be awarded under this Decree to each Claimant." Paragraph 49 puts no

conditions on the United States' determinations other than that they be "reasonable and equitable

in relation to the Claimant population and the total amount of the Settlement Fund and . . .

consistent with the provisions of this Decree."[6] Decree, ¶ 49.

---

[6] However, as the United States has represented to the City and the Court, if the United States was aware of information indicating that a specific Claimant would not have been hired at the time she applied, or of reasons (e.g., subsequent criminal history) the United States would choose not to seek relief for a Claimant, the United States would not propose that the Claimant receive relief under the Decree. In fact, the United States has determined that a number of Claimants should not receive relief based on such information. For example, as discussed infra, the United States determined that Claimants who passed the 2002 written examination the City administered prior to the PAT, but scored lower than the lowest-scoring applicant hired from the 2002 eligibility list, are not entitled to relief because it is clear that they would not have been hired from that list even if they had passed the PAT. The United States also determined that it would not seek relief for other Claimants based on information such as criminal charges pending at the time the Claimant would have been considered for hire. The United States is aware of no such information regarding the Claimants it has determined are entitled to monetary relief. The United States has repeatedly invited the City to share such information with the United States if the City is aware of any. To date, the City has not responded.

Once the United States makes its relief determinations, the Decree provides different objection procedures for the City and the Claimants. Moreover, the Decree clearly distinguishes between objections to a determination regarding monetary relief and objections to a determination regarding priority hiring relief. Thus, Paragraphs 51 through 53 of the Decree provide a mechanism for Claimants who are unhappy with the United States' relief determination in any respect to file an objection. The Claimants filing objections most likely will be individuals who the United States has determined should not receive relief or individuals who believe they should receive more monetary relief than the amount determined by the United States.

A separate paragraph, Paragraph 54, allows the City to object to a determination by the United States that a claimant is eligible for consideration for priority hiring:[7]

> If the City disagrees with the United States' determination that <u>a Claimant is eligible for consideration for Priority Hire</u>, no later than thirty (30) days prior to the date set for the Fairness Hearing on Individual Relief the City shall file with the Court an objection stating all grounds for the City's contention that the Claimant is not eligible for such relief and identifying all documents relating to the City's contention and all witnesses with knowledge of facts supporting the City's contention.

---

[7] It must be emphasized that the United States' determination that a Claimant is eligible for <u>consideration</u> for priority hiring relief does not mean that the City will be required to hire the Claimant. Under the Decree, the City is required to hire up to, but no more than, five Claimants as priority hires, regardless of how many Claimants are eligible for consideration. Decree, ¶ 31. After the Fairness Hearing on Individual Relief, when the City is in a position to begin hiring new police officers, the City will have an opportunity to evaluate the current qualifications of the Claimants found eligible for consideration for priority hire. The Decree makes clear that the City is not required to hire any Claimant who is "unqualified for the entry-level police officer position, using the lawful, objective hiring criteria in use by the City at the time it evaluates the Claimant's qualifications." Decree, ¶ 33.

(Emphasis added.)[8]  There is no provision in the Decree that allows the City to file an objection to any <u>monetary relief</u> determination.  As the City itself seems to recognize, this makes sense because none of the $170,000 Settlement Fund will revert to the City.  <u>See</u> Def. Brief, pp. 4-5 ("If the City has no ability to reduce the ultimate size of the Fund by objecting to monetary relief awards . . . what would be the reason for allowing such objections to be made?").  While the City clearly has an interest in which and how many Claimants it will have to evaluate for priority hiring (and may have to hire), the same cannot be said with regard to monetary relief.  As established previously, the City is required to pay $170,000 in monetary relief, period.

The distinction between monetary relief and priority hiring relief determinations is carried forward to the Fairness Hearing.  Pursuant to Paragraph 55 of the Decree, at the end of the Fairness Hearing, the Court must decide whether to amend any of the United States' relief determinations.  Paragraph 55 states that the purpose of the Fairness Hearing is to "determine which, if any, objections to the United States' relief determinations, as stated in the Relief Awards List, are well-founded."  In other words, the Fairness Hearing is not a trial at which the United

---

[8]  Paragraph 54 thus required the City to file its objections to the United States' determinations regarding consideration for priority hire no later than October 20, 2006.  On that date, the City filed its Detailed Objections.  It appears that the City has made no objections other than those discussed in this memorandum.  Specifically, the City objects to the United States' determination that any Claimant except Cheryl Ann Frey, Sue Yong Rodgers, Mary Schmeisser or Cheryl Sidun-Lego is eligible for consideration for priority hire because each: (1) took and failed the 2002 written examination; or (2) never took the written examination or "equivalent."  First, the City's meritless objections regarding the 2002 written examination are discussed in Section III.B.3.  The City's second ground for objection is based on the City's meritless assertion, discussed below, that the United States must prove that a Claimant would have scored high enough on the written examination to be hired before the Claimant can receive relief under the Decree.  In addition, the City purports to object to all Claimants the United States' determined should receive monetary relief on similar grounds.  However, as established <u>infra</u>, the Decree does not allow the City to object to the United States' determinations regarding monetary relief.

States must establish that any Claimant would have been hired if she had passed the PAT before she can receive monetary relief under the Decree. Rather, the Court must consider only the objections the Decree provides for – specifically, objections made by individual Claimants, pursuant to Paragraph 52, and objections made by the City to the United States' determination that a particular Claimant is entitled to priority hiring relief, pursuant to Paragraph 54.

This is confirmed by the portion of Paragraph 55 setting forth the standards the Court will use to determine whether an objection is "well- founded." Regarding objections to a determination by the Untied States that a Claimant is entitled to consideration for priority hire, the Decree states:

> The Court shall find that any objection, including any objection made by the City, regarding a Claimant's eligibility for consideration for Priority Hire is well-founded only if the objector(s) prove by a preponderance of the evidence that, at the time she failed the PAT, the Claimant was not qualified for the position of entry-level police officer in the City's Bureau of Police using the lawful, objective hiring criteria in use by the City at that time, for reasons including, but not necessarily limited to, the Claimant's medical background, psychological background or criminal history.

(Emphasis added.)[9] In contrast, the portion of Paragraph 55 addressing monetary relief does not contemplate objections by the City:

> The Court shall find that any objection regarding the amount of monetary relief to be awarded to a Claimant is well-founded only if the amount is not reasonable and equitable in relation to the Claimant population and the total amount of the Settlement Fund.

Moreover, the portion of Paragraph 55 relating to monetary relief does not require that the Court determine whether a Claimant was qualified or would have been hired if she had passed the PAT.

---

[9] While it is the Consent Decree that governs the issues before the Court, placing on the City the burden of proving that a Claimant was not qualified, once the United States has won a liability judgment against the City, is consistent with controlling Title VII case law. See International B'hd. of Teamsters v. United States, 431 U.S. 324, 359 & 361-62 (U.S. 1977) (once the plaintiff has proved that the employer engaged in a pattern or practice of discrimination, class members are presumptively entitled to relief, and the plaintiff need not prove that they were qualified).

16

Instead, it states that the Court will review the United States' monetary relief determinations only for fairness and reasonableness in relation to the eligible Claimant population. In other words, the Court will amend the United States' monetary relief determinations only if the United States does not provide eligible Claimants a pro-rata share of the total amount of relief and there is no reasonable and equitable justification for the United States' deviation from a pro-rata distribution.[10]    The City acknowledges that different standards apply to priority hiring relief determinations and monetary relief determinations. See Def. Br., pp. 12, 15 (arguing that 2002 Claimants who are not eligible for monetary relief, are entitled to priority hiring relief); Defendant's First Objections at p. 3, ¶ 4 (same). The City asserts, however, that, contrary to the language of Paragraph 55, the Court must apply a higher standard to individuals the United States has determined are eligible for monetary relief than it will apply to those individuals the United States has determined the City must consider for priority hiring. Id. Not only is there no support in the Decree for the City's assertion, it simply makes no sense.

### 3. The Decree Treats the Written Civil Service Examination Like Any Other Qualification

A simple application of the relevant provisions of the Decree disposes of the City's assertions regarding Claimants who did/did not take the Civil Service examination in 2002. Contrary to the City's assertions, nothing in the Decree allows for special treatment of the written

---

[10] The only type of objection allowed by the Decree that is not explicitly addressed in Paragraph 55 is an objection by a Claimant asserting that she should receive relief even though the United States determined that she should not. As noted previously, a determination by the United States that a Claimant should not receive relief is essentially a determination that the United States would not have sought relief for the Claimant even if the parties had not settled. Appropriately, the only limitation placed on the United States in making such a determination is that it be "reasonable" and "consistent with the provisions" of the Decree. Decree, ¶ 49.

Civil Service examination.  Indeed, the written examination is not mentioned in the Decree.

As the Court is aware, in 2002, the City reversed the usual order of the PAT and the written examination, and administered the written examination before the PAT.  As a result, the parties know what scores the 2002 Claimants received on the written examination the City administered that year.  The United States appropriately took the 2002 written examination scores into account in determining whether Claimants should receive relief in connection with their 2002 applications.  In fact, the United States determined that only one Claimant, Cheryl Ann Frey, should receive relief for her 2002 application <u>because she scored higher on the written examination than the lowest-scoring applicant hired by the City from the 2002 eligibility list</u>.  The United States thus determined that Ms. Frey is eligible for relief because the United States (and the Court) cannot conclude that Ms. Frey's written examination score would have disqualified her, and the United States is aware of no other reason she would have been disqualified.[11]

---

[11]  The United States determined that ten Claimants should not receive relief in connection with their 2002 applications, based on their written examination scores.  Although each of the ten Claimants had to pass the written examination in order to take the PAT and, thus, was "qualified," the written examination score (including veterans points) of each was lower than the score of the lowest-scoring person hired by the City from the 2002 eligibility list.  Because the City ranks applicants based on their written exam scores (including veterans points), we can be confident that, even if these ten Claimants had passed the PAT, they would not have been hired.  The United States therefore does not seek relief for these individuals in connection with their 2002 applications.

The City's argument that Ms. Frey could not possibly have been hired, based on her written examination score, "because of the number of PAT-failing men who ranked ahead of her" is devoid of merit.  Def. Brief, p. 12.  The fact that there were nine men and one woman who failed the PAT and scored higher than Ms. Frey on the written examination (<u>see</u> Defendant's Detailed Objections, filed October 20, 2006) does not prove that Ms. Frey would not have been hired if she had passed the PAT.  As the City has asserted repeatedly in this case and the Court itself indicated in entering the Decree, there always have been multiple steps in the selection process after the PAT (<u>e.g.</u>, the background investigation, medical and psychological screening, etc.).  Many men who passed the PAT in 2002, as well as other years, were not hired,

Although the United States determined that none of the Claimants other than Ms. Frey is eligible for relief in connection with a 2002 application, the City asserts that any Claimant who applied and failed the written examination in 2002, and also applied in an earlier year, is not eligible for priority hiring relief in connection with her earlier application.[12] Thus, the City asserts that a Claimant's score on the 2002 written examination is proof of how the Claimant would have scored on the written examination administered at the time of her earlier application if the City had allowed her to take it. That assertion is incorrect under the Decree and would be unwarranted in any case.[13]

-----

and there is no reason to assume the men who <u>failed</u> the PAT would have fared better. The City is inviting the Court to speculate, to the detriment of a victim of discrimination. The bottom line is that Ms. Frey received a written examination score of 86, and six of the men hired from the 2002 list scored as low or lower (including veterans points). There is no proof that, if Ms. Frey had passed the PAT, she would not have been hired.

[12]   The City also asserts that any Claimant who applied in 2002 but did not score high enough to be hired from the 2002 eligibility list is not entitled to <u>monetary</u> relief. As established above, however, the City cannot object to a Claimant's eligibility for monetary relief.

Nonetheless, it should be noted that, as indicated previously, the City appears to understand that different standards apply to objections to priority hiring relief and objections to monetary relief. Thus, the City argues that Claimants' 2002 written examination scores make them ineligible for priority hiring relief only if they <u>failed</u> the written examination (because, under Paragraph 55 of the Decree, the Court may find an objection by the City to eligibility for priority hiring relief well-founded only if the City proves that the Claimant was not <u>qualified</u> for hire). <u>See</u> Defendant's Detailed Objections, I. However, the City illogically contends that, in order for a Claimant to be eligible for monetary relief, the United States must prove, not just that she was qualified, but also that she would have scored high enough on the written examination to be hired. <u>See</u> Defendant's Detailed Objections, II.

[13]   The City also asks the Court to hold that Claimants who failed the PAT in 2002 are not eligible for any relief unless they "tried again" in 2002, when they still would have had to take the discriminatory PAT. Def. Brief, p. 11. This assertion is devoid of logic, of legal support and - more importantly - of any support in the Decree. The parties were aware when they executed the Decree of the identities of the women who failed the PAT in 2000 and the women who re-applied in 2002. Yet the parties listed <u>all</u> women who failed the PAT in 2000 on Appendix A as potentially eligible for relief, regardless of whether they applied again in 2002.

The fact that a Claimant failed the 2002 written examination does not prove that she would have failed an earlier written examination. There is no evidence that the written examination given in 2002 was the same as that given as part of any earlier selection process and no evidence regarding the extent of the differences. Even if the same written examination was used in all years, there is no evidence regarding its standard error, so we do not even know how likely it is that a Claimant would have obtained the same score she received in 2002 (or a score within a certain range of that score) if she had taken the examination on another occasion.[14] These are some of the issues that would have been addressed by statistical and testing experts if the parties had decided to litigate rather than settle the remedies phase of this case.[15] Moreover, even a

---

[14] In this regard, the United States has invited the City to discuss any individual Claimant who failed the written examination in 2002 if the City believes the Claimant's 2002 written examination score was so low that she could not possibly have passed the written examination in an earlier year. The City has not accepted the invitation and has made no such objection to any individual Claimant.

[15] In Defendant's Detailed Objections, the City identifies "Constance Cook, Human Resources Manager and Secretary of the Civil Service Board, and Daniel Tempestini, Board President" as the only witnesses it plans to call and states that they will testify about "the nature, scope and sources of each Civil Service test given for police officers." Neither Ms. Cook nor Mr. Tempestini is qualified to provide expert testimony regarding the written examination. In addition, the City refers to the United States' attempts, prior to the liability phase trial, to identify male and female applicants who failed the PAT in Erie, but were employed as certified law enforcement officers in another jurisdiction. Such information would have been relevant to whether the PAT validly measured ability to perform the physical aspects of the police officer job, because the United States' experts would have testified that numerous studies show that the job tasks performed by police officers are very similar regardless of the jurisdiction in which the officers serve. However, whether a Claimant passed a written examination in another jurisdiction is not relevant to any remedies issue. We do not know what written tests may have been given in any other jurisdiction. Indeed, to the extent that the City requests the Court to draw a negative inference - i.e., to conclude that the fact that the City has no evidence that a Claimant passed an examination in another jurisdiction is evidence that she could not pass the Erie written examination – the City has not even shown that the Claimants took a written examination in another jurisdiction.

statistician or testing expert could not be certain how any particular individual would have scored. In the final analysis, we do not know how each Claimant would have scored on the written examination in any year except 2002 because the Claimants were not allowed to take the written examination as a result of the PAT that this Court has found unlawful. There is no evidentiary basis for the City's blanket assertion that a Claimant's 2002 written examination score raises a presumption (much less proves) that she was not qualified when she applied on an earlier occasion.

In summary, the Decree allows the City to object to the United States' determination that a Claimant is eligible for consideration for priority hiring. If the City does object, the City bears the burden of proving that the Claimant was not qualified based on the City's lawful, objective hiring criteria, including the written examination. The Decree does not allow the City to object to a Claimant's eligibility for monetary relief. In no case is the United States required to prove that a Claimant who failed the PAT would have passed any other steps in the City's selection process. Moreover, a Claimant's score on the written examination the City administered in 2002 does not establish that she was not qualified when she took the PAT as part of an earlier selection process.

**C.    THE COURT SHOULD DENY THE CITY'S MOTION
TO COMPEL BECAUSE THE UNITED STATES HAS
PRODUCED  EVERYTHING REQUIRED BY THE DECREE**

As indicated previously, the Consent Decree specifically addresses what information the parties (and Claimant objectors) must provide prior to the Fairness Hearing on Individual Relief. These terms of the Decree, not the Federal Rules of Civil Procedure, define the parties'

21

"discovery" obligations.[16]  Indeed, although the City purports to bring its motion pursuant to Rule 37, the City has not served interrogatories, requests for production of documents or any other type of discovery request allowed by the Federal Rules.

The claims process established by the Decree "works" only because of its discovery provisions, which allow the parties to meet the Decree's deadlines and complete the claims process as required by the Decree.  The Decree's discovery provisions are part and parcel of the parties' settlement, and the Court must give them effect just as it must give effect to any other provisions of the Decree.  Paragraphs 49 and 50 of the Decree set forth the United States' obligation to produce information to the City prior to the Fairness Hearing.[17]  Thus, in considering the City's motion to compel, the Court must determine whether what the City seeks from the United States is required by Paragraphs 49 and 50 of the Decree.

---

[16]  Nothing prohibits the parties from agreeing to provide less than would be required by the Federal Rules of Civil Procedure.  Even if the parties had not settled the remedies phase of this case, Rule 29 would allow the parties to "modify . . . procedures governing or limitations placed upon discovery" by written stipulation.  Fed. R. Civ. P. 29.

[17]  Paragraph 51 specifies the information the United States must provide to Claimants. Paragraph 54 sets forth the City's obligations, and Paragraph 52 sets forth the obligations of objecting Claimants.  Paragraph 54 requires that the City file objections to the United States' priority hiring relief determinations with the Court and serve them on the United States at least thirty days prior to the Fairness Hearing.  It also requires that each of the City's objections state all grounds for the City's contention that the Claimant is not eligible for hiring relief.  In addition, the City must provide to the United States a copy of all documents relating to the City's contention that the Claimant is not eligible for hiring relief and must make officials, agents and employees of the City with knowledge of facts supporting the City's contention available for interview or deposition.  Paragraph 52 requires that each objecting Claimant provide to the Court and the parties a description of her basis for disputing the United States' relief determination, along with any supporting documentation.  The minimal discovery obligations the Decree places on the United States (discussed infra), as compared to the more substantial obligations placed on the City, are consistent with the fact that the United States is not required to prove the qualifications of individual Claimants.

Paragraph 49 requires that the United States provide the City with a copy of the Relief Awards List the United States filed with the Court on September 8, 2006, along with the Interest in Relief forms the United States received from Claimants. The United States complied with this requirement on September 8.[18]  Paragraph 50 requires that the United States send to each Claimant a letter giving her notice of the United States' determination regarding her eligibility for relief, the reasons for any determination by the United States that the Claimant is not eligible for a form of relief she sought and the amount of the Claimant's monetary relief award, if any.  The United States mailed letters complying with these requirements to the Claimants on October 3, 2006.  The United States has fulfilled all of its obligations under the Decree.  The City has identified no provision of the Decree obligating the United States to provide more information.

Nonetheless, although the United States was not required to provide any additional information to the City, weeks before the City filed its First Objections indicating that it planned to file a motion to compel, the United States voluntarily provided additional information, at the City's request.  Thus, by letter dated September 20, 2006 (Attachment 1 to the City's brief), the United States explained the information it considered in determining that Claimants were eligible for monetary and/or priority hiring relief.  The City's implication that the United States provided

---

[18] The City's assertion that the United States did not comply is incorrect. See Motion, ¶¶ 7, 8.  On August 29, 2006, the City's paralegal requested by email that the United States provide the Interest in Relief forms in electronic (pdf) format, rather than on paper.  On September 7, 2006, counsel for the United States timely sent all of the forms in pdf format by email to the paralegal.  On September 22, 2006, another individual from the City contacted the United States, claimed that the City had not received the email and requested a paper copy of the forms.  The United States then contacted the City's paralegal, who confirmed that she had received the email, indicated that there had been some mis-communication within the City Solicitor's office and asked that the United States send paper copies as well.  The United States did so.

only driver's license numbers for most of the Claimants the United States determined are entitled to relief is incorrect. See Defendant's Motion to Compel Production of Documents Regarding Proposed Relief Awards, ¶ 9. To the contrary, page 2 of the United States' September 20 letter states clearly that 41 of the Claimants "had a valid driver's license, had never had [a] license revoked or suspended, and had never been convicted of a felony or misdemeanor at the time that she presumptively would have been hired if she passed the PAT." With respect to the other three women the United States determined are entitled to relief, the United States told the City it had no information regarding one of the women, and the United States provided the information it had about the other two and explained why the United States determined they are entitled to relief despite that information. The United States has repeatedly told the City it has no other information relevant to the Claimants the United States has determined are eligible for relief. The questionnaires the City refers to in its motion asked nothing about education, scores on the SAT's or "other standardized tests" or - with the exception of the driving and criminal record information already provided to the City - other "background which may evidence [the Claimant's] possession of sufficient knowledge and skill to have scored highly on the civil service exam." Def. Brief, p. 13.

The City asserts that the information that the United States has provided is not sufficient to prove the Claimants the United States has determined are eligible for relief would have been hired. That assertion is irrelevant. As established above, the Decree does not require that the United States provide to the City such proof because: (1) the Decree does not allow the City to object to the United States' determinations regarding monetary relief, and (2) once the United States determines that a Claimant is eligible for consideration for priority hiring, she is presumptively

24

eligible, and the City must prove that she was not qualified at the time she took the PAT.

## IV.  **CONCLUSION**

For all of the foregoing reasons, the Court should deny the City's motion to compel because the United States has provided all information it is required to provide.  In addition, the Court should hold that:  (1) no portion of the $170,000 Settlement Fund will revert to the City regardless of how many Claimants are entitled to monetary relief; (2) the United States is not required to prove that a Claimant would have passed the other steps in the City's selection process in order for the Claimant to be eligible for either monetary or priority hiring relief; (3) the Decree only allows the City to file objections to Claimants' eligibility for consideration for priority hire; and (4) a Claimant's score on the written examination administered by the City in 2002 is not proof that the Claimant was not qualified when she took the PAT in another year.

Respectfully submitted,

SHARON A. SEELEY
CLARE GELLER
Trial Attorneys
U.S. Department of Justice
Civil Rights Division
Employment Litigation Section
950 Pennsylvania Avenue, N.W.
Patrick Henry Building, Room 4908
Washington, D.C.  20530
Telephone: (202) 514-4761

s/Jessica Lieber Smolar
JESSICA LIEBER SMOLAR
Assistant United States Attorney
U.S. Post Office and Courthouse
700 Grant Street, Suite 400
Pittsburgh, PA 15219
Telephone: (412) 894-7419
PA ID No.: 65406