IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>CITY OF ERIE, PENNSYLVANIA,<br><br>Defendant. | Civil Action No. 04-4 Erie<br><br>JUDGE MCLAUGHLIN |

STIPULATIONS

Plaintiff United States of America ("United States") and defendant City of Erie ("City") stipulate to the following facts for purposes of the Fairness Hearing on Individual Relief, currently scheduled for November 20, 2006, and any related proceedings.

For purposes of the following Stipulations, "the [year] written examination" means the written examination administered by the City as part of its entry-level police officer selection process in the year indicated.

1. The City of Erie Civil Service Commission was responsible for selecting the written examination to be administered as part of each of the selection processes for entry-level police officers in the City's Bureau of Police between 1996 and 2002.

2. In selecting a written examination to be administered as part of each of the entry-level police officer selection processes between 1996 and 2002, the Civil Service Commission consulted with the Chief of the Erie Bureau of Police and obtained the Chief's approval of the written examination selected.

3. Daniel Tempestini has been a member of the Civil Service Commission since approximately 1992 and has chaired the Civil Service Commission since 1999.

4. Mr. Tempestini is not qualified by knowledge, skill, experience, training, or education to testify as an expert in any of the following areas: statistics, Industrial/Organizational psychology, psychometrics, employment test development, test validation or test reliability.

5. Constance Cook has been employed by the City of Erie as Benefits Coordinator in the Human Resources Department since June 1997.

6. Ms. Cook is not qualified by knowledge, skill, experience, training, or education to testify as an expert in any of the following areas: statistics, Industrial/Organizational psychology, psychometrics, employment test development, test validation or test reliability.

7. Charles E. Bowers, Jr., was the Chief of the Erie Bureau of Police when the 2002 written examination was selected and provided the Civil Service Commission with input into the decision.

8. Andrea Hoffman was the City's Human Resources manager at the time of the City's 2002 entry-level police officer selection process.

9. Stanard & Associates, Inc. was one of the companies from which the City obtained a written examination that the City administered at some time during the period between 1996 and 2002 as part of its entry-level police officer selection process.

10. The International Personnel Management Association ("IPMA") was one of the companies from which the City obtained a written examination that the City administered at some time during the period between 1996 and 2002 as part of its entry-level police officer selection process.

11. For each of the entry-level police officer selection process between 1996 and 2002, the City administered a written examination that was not identical to the one it had administered as part of the immediately preceding selection process. The City "change[d] companies back and forth" so that applicants would not be able to memorize the test questions.

12. As part of the City's 2002 entry-level police officer selection process, the City administered a written examination that was not the same as any of the written examinations it had previously administered.

13. As part of the City's 2002 entry-level police officer selection process, the City administered a different written examination than any it had previously administered because the examination used in 2002 was supposed to have no adverse impact on minority applicants.

14. Attachment 1 to these Stipulations (Exhibit 3 to Defendant's First Set of Objections to Relief Awards) accurately sets forth the names (under the heading "Name") and written examination scores (under the heading "Written Exam") of applicants who failed the 2002 written examination.

15. Attachment 2 to these Stipulations (Pl. Dep. Ex. 19) is the entry-level police officer eligibility list resulting from the City's 2000 selection process.

16. Attachment 2 to these Stipulations (Pl. Dep. Ex. 19) accurately sets forth the names (under the heading "Name") and written examination scores (under the heading "Written Exam") of applicants who passed the 2002 written examination.

17. The written examination scores listed under the heading "Written Exam" on Attachment 2 to these Stipulations (Pl. Dep. Ex. 19) are raw scores (i.e., number of the 150 test questions answered correctly) on the 2002 written examination.

18. Attachment 3 to these Stipulations (Pl. Dep. Ex. 16) is the entry-level police officer eligibility list resulting from the City's 1998 selection process.

19. Attachment 3 to these Stipulations (Pl. Dep. Ex. 16) accurately sets forth the names (under the heading "NAME") and written examination scores (under the heading "WRITTEN EXAM") of applicants who passed the 1998 written examination.

20. Attachment 4 to these Stipulations (Pl. Dep. Ex. 13) is the entry-level police officer eligibility list resulting from the City's 1996 selection process.

21. Attachment 4 to these Stipulations (Pl. Dep. Ex. 13) accurately sets forth the names (under the heading "NAME") and written examination scores (under the heading "SCO" for applicants with an entry in the column labeled "VP" and under the heading "RAN" for applicants with no entry in the column labeled "VP") of applicants who passed the 1996 written examination.

22. The following applicants (listed under the heading "APPLICANT") received the following scores on the 2002 written examination (under the heading "SCORE ON 2002 WRITTEN EXAM") and on the 2000 written examination (under the heading "SCORE ON 2000 WRITTEN EXAM"):

| APPLICANT | SCORE ON 2002 WRITTEN EXAM | SCORE ON 2000 WRITTEN EXAM |
|---|---|---|
| Nicholas Gabriel Belluomini | 69 | 132 |
| David Paul Madurski | 69 | 118 |
| Raymond Sisson, Jr. | 68 | 91 |
| Eric Richard Popovic | 66 | 112 |

| | | |
|---|---|---|
| Luis Cruz, Jr. | 65 | 103 |
| Bradley Schell | 64 | 64 |
| Steven P. Brady | 63 | 118 |
| Kevin Patrick Matlock | 63 | 126 |
| Gary Lee Rictor | 62 | 107 |
| Jeremy Arthur Roberts | 62 | 118 |
| Kristopher May | 61 | 120 |
| Stephen Harold Merkle | 61 | 119 |
| John Harold Dalton | 60 | 121 |
| Jason Morell | 60 | 123 |
| Jeffrey P. Cuzzola | 59 | 86 |
| Robert J. Kuhn | 58 | 114 |
| Ernest Dickens | 54 | 109 |
| Frank Klemm III | 47 | 110 |

23. All of the applicants listed in Stipulation 23, above, failed the 2002 written examination, and all except Raymond Sisson, Jr., Luis Cruz, Jr., Bradley Schell and Jeffrey P. Cuzzola, passed the 2000 written examination.

24. Saprina Cooper scored 64 on the 2002 written examination and was not allowed to take the 2000 written examination because she failed the PAT in 2000.

25. Tabitha Roberts scored 60 on the 2002 written examination and was not allowed to take the 2000 written examination because she failed the PAT in 2000.

26. Zabrina Thompson scored 52 on the 2002 written examination and was not allowed to take the 2000 written examination because she failed the PAT in 2000.

27. Kristopher May and Frankie Morales are the only applicants known to the City to have failed the 2002 written examination and taken the 1998 written examination.

28. Kristopher May, who failed the 2002 written examination with a score of 61, passed the 1998 written examination with a score of 73.

29. Frankie Morales scored 78 on the 2002 written examination and scored 84 on the 1998 written examination.

30. Denise Osterberg scored 67 on the 2002 written examination and was not allowed to take the 1998 written examination because she failed the PAT in 1998.

31. Stephan Merkle and Kevin Matlock are the only applicants known to the City to have failed the 2002 written examination and taken the 1996 written examination.

32. Stephan Merkle failed the 2002 written examination with a score of 61 and passed the 1996 written examination with a score of 76.

33. Kevin Matlock failed the 2002 written examination with a score of 63 and passed the 1996 written examination with a score of 73.

34. Mary Ann Santiago scored 64 on the 2002 written examination and was not allowed to take the 1996 written examination because she failed the PAT in 1996.

35. Ninety-nine (99) of the one hundred seventeen (117) applicants who took the 1996 written examination passed it; the pass rate on the 1996 written examination was 84.6%.

36. Seventy-one (71) of the eighty-six (86) applicants who took the 1998 written examination passed it; the pass rate on the 1998 written examination was 82.6%.

37. At least one hundred thirty-seven (137) of the one hundred sixty-seven (165) applicants who took the 2000 written examination passed it; the pass rate on the 2000 written examination was 83.0%.

38. Two hundred fifty-three (253) of the four hundred thirty-three (433) applicants who took the 2002 written examination passed it; the pass rate on the 2002 written examination was 58.4%.

39. Attachment 2 to these Stipulations (Pl. Dep. Ex. 19) is a true and correct copy of a business record of the City admissible in evidence pursuant to Rule 803(6) of the Federal Rules of Evidence.

40. Attachment 3 to these Stipulations (Pl. Dep. Ex. 16) is a true and correct copy of a business record of the City admissible in evidence pursuant to Rule 803(6) of the Federal Rules of Evidence.

41. Attachment 4 to these Stipulations (Pl. Dep. Ex. 13) is a true and correct copy of a business record of the City admissible in evidence pursuant to Rule 803(6) of the Federal Rules of Evidence.

42. Attachment 5 to these Stipulations (Pl. Dep. Ex. 47) is a true and correct copy of a business record of the City admissible in evidence pursuant to Rule 803(6) of the Federal Rules of Evidence.

43. Attachment 6 to these Stipulations (Pl. Dep. Ex. 22) is a true and correct copy of a business record of the City admissible in evidence pursuant to Rule 803(6) of the Federal Rules of Evidence.

44. Attachment 6 to these Stipulations (Pl. Dep. Ex. 22) accurately sets forth the names (under the heading "Name") of individuals who applied for an entry-level police officer position as part of the City's 2000 selection process. The score obtained on the 2000 written examination by each applicant who took the 2000 written examination is accurately set forth in Attachment 6 in the row corresponding to the applicant's name (under the heading "Written Exam Score").

45. Attachment 7 to these Stipulations (Pl. Dep. Ex. 31) is a true and correct copy of a business record of the City admissible in evidence pursuant to Rule 803(6) of the Federal Rules of Evidence.

46. The 2000 written examination was the 175.3 Police Officer Exam, which the City purchased from IPMA.

47. According to IPMA, the 2000 written examination tested the following nine areas, each of which is explained in Attachment 8 to these Stipulations (Pl. Dep. Ex. 21, p. PRI 0217): Vocabulary, Filling Out Standard Forms, Police Procedures and Information, Wanted Posters, Accident Diagrams, Exercising Judgment, Problem Sensitivity, Scanning area maps, and Identifying Themes and Ideas.

48. Attachment 8 to these Stipulations (Pl. Dep. Ex. 21) is a copy of the IPMA study guide, corresponding to the 175.3 Police Officer examination, which the City purchased from IPMA and distributed to applicants prior to the test date for use in preparing for the 2000 written examination.

49. Attachment 8 to these Stipulations (Pl. Dep. Ex. 21) contained information that an applicant had to memorize for the 2000 written examination.

50. The 2002 written examination was the D-2 Police Officer Exam, which the City purchased from IPMA.

51. Attachment 9 to these Stipulations is a copy of IPMA promotional materials, describing the 2002 written examination (the D-2). [From IPMA-HR website]

52. According to IPMA, the 2002 written examination tested the following job dimensions: Observation and Memory (Wanted Posters), Ability to Learn Police Material, Police Interest Questionnaire (Non-Cognitive), Verbal and Reading Comprehension and Situational Judgment and Problem Solving. [From IPMA-HR website]

53. The 2002 written examination included a non-cognitive component, which is not included in other entry-level Police Officer tests. [From IPMA-HR website]

54. According to the IPMA promotional materials, "inclusion of a non-cognitive testing component raises the validity of these tests, and also serves to markedly lower their adverse impact on minority group candidates." [From IPMA-HR website]

55. According to IPMA, thirty (30) percent of the items (i.e., questions) on the 2002 written examination, assessed non-cognitive dimensions. [From IPMA-HR website]

56. Applicants were not given a study guide corresponding to the 2002 written examination prior to the date on which they took the examination; instead, they were given test information packets ("TIPS") at the beginning of the examination and allowed to study it for 25 minutes. [From IPMA-HR website]

57. Although applicants were not given a study guide specifically for the IPMA 2002 written examination (D-2), the City did offer a two to four hour general "police officer prep course" to provide test-taking strategies to applicants just as the City had offered at least for the years 1996, 1998 and 2000.

| | |
|---|---|
| On behalf of plaintiff United States of America: | On behalf of defendant City of Erie: |

SHARON A. SEELEY  [IL Bar # 06197091]
CLARE GELLER [NY Bar (no number issued)]
Trial Attorneys
U.S. Department of Justice
Civil Rights Division
Employment Litigation Section
950 Pennsylvania Avenue, N.W.
Patrick Henry Building, Room 4024
Washington, D.C.  20530
Telephone: (202) 514-4761

OFFICE OF THE ERIE CITY SOLICITOR
626 State Street, Room 505
Erie, PA  16501
Telephone: (814) 870-1230

 /s/Gerald J. Villella
Gerald J. Villella, Esquire
PA ID 32814

Date: November 8, 2006

 /s/Jessica Lieber Smolar
JESSICA LIEBER SMOLAR
Assistant United States Attorney
U.S. Post Office and Courthouse
700 Grant Street, Suite 400
Pittsburgh, PA 15219
Telephone: (412) 894-7419
PA ID No.: 65406

Date: November 8, 2006