**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) ) Plaintiff, ) v. ) ) CITY OF ERIE, PENNSYLVANIA, ) ) Defendant. ) | Civil Action No. 04-4 Erie |

**MEMORANDUM ORDER**

McLAUGHLIN, SEAN J., District J.,

Defendant, the City of Erie, has filed a motion to compel the production of documents relating to a number of individual claimants whom the United States asserts are entitled to relief under the Consent Decree entered in this case on June 15, 2006. This Court has scheduled a fairness hearing to be held on November 20, 2006, at which time it will address any outstanding objections to the United States' proposed awards of relief. The City contends that it needs certain information as to some of the claimants in order to prepare for the hearing. The United States responds that it has already provided the City with all of the information to which the City is entitled under the terms of the Consent Decree. This dispute has raised some issues relative to the operation of the Consent Decree, which the parties have asked this Court to address.

Boiling the City's arguments to their essence, the City asserts the following: (1) that, as for any particular claimant seeking an award of relief, the United States has the burden of proving at the hearing that the claimant would have been hired if she had passed the Physical Agility Test (PAT); (2) that, as for any claimant found to be ineligible for monetary relief following the November 20 fairness hearing, the portion of the $170,000 Settlement Fund allocated to that claimant must revert to the City; and (3) that, to the extent any claimant failed the written Civil Service exam administered in

1

2002, such claimant is automatically precluded from obtaining any relief, even for prior years in which she took and failed the PAT.

As a preliminary matter, we agree with the United States that these disputes are governed by the terms of the Consent Decree. The Consent Decree was freely entered into by the parties as a means of avoiding the expense and delay inherent in a full-blown remedies-phase trial. It contains detailed provisions setting forth, e.g., the claims procedures, the process for raising objections to the Plaintiff's relief determinations, and the standards to be used in adjudicating those objections. Accordingly, our analysis begins there.

Because consent decrees share many of the attributes of contracts, they are interpreted with reference to traditional principles of contract interpretation. See United States v. State of New Jersey, 194 F.3d 426, 430 (3d Cir. 1999). Thus, we begin our analysis with the language of the decree. Id. While the circumstances surrounding the formation of a consent decree are always relevant to an analysis of its meaning, a court may not resort to extrinsic evidence unless the decree itself is ambiguous. Id. A consent decree provision is considered ambiguous only when it is reasonably susceptible of at least two different interpretations from an objective standpoint. Id. Bearing these principles in mind, we turn to the City's various arguments.

I.

The City insists that, as to any claimant for whom an award of relief is proposed, the United States bears the burden of proving that the claimant would have been hired by the City but for its use of the PAT. We agree with the United States that such a view is contrary to the terms of the Consent Decree.

Paragraphs 47-55 of the Consent Decree set forth the procedures governing the determination of individual relief awards. Those provisions establish a period within which claimants may submit forms indicating an interest in obtaining relief ("Interest in

Relief forms"). (Consent Decree ¶ 48.) Upon expiration of that period, the United States must file and serve a Relief Awards List indicating, among other things, the nature and amount of relief (if any) which the United States has determined should be awarded to eligible claimants. (Decree ¶ 49.) The United States' discretion in this regard is limited only by the mandate that it "shall determine the amount of relief to be awarded... in a manner that is reasonable and equitable in relation to the Claimant population and the total amount of the Settlement Fund and that is consistent with the provisions of this Decree." (Id.) Thereafter, claimants and/or (with respect to priority hires) the City may file objections challenging the United States' relief award determinations. (Decree ¶¶ 52 and 54.) The Court shall approve the Plaintiff's Relief Awards List as submitted, except to the extent the Court may find any objections "well-founded." As to monetary awards, the Court shall find that the objection is well-founded "only if the amount is not reasonable and equitable in relation to the Claimant population and the total amount of the Settlement Fund." (Decree ¶ 55.) With regard to priority hires, the Court shall find an objection (including one made by the City) to be "well-founded" only "*if the objector(s) prove by a preponderance of the evidence* that, at the time she failed the PAT, the Claimant was not qualified for the position of entry-level police office in the City's Bureau of Police using the lawful, objective hiring criteria in use by the City at that time..." (Id. (emphasis added).)

Thus, the terms of the Consent Decree make the United States' relief award determinations presumptively valid except to the extent they are successfully challenged by an objector. No provision of the Decree imposes upon the United States the burden of proving that an eligible claimant would have been hired by the City but for the PAT. In fact, insofar as the City's right to challenge potential priority hires is concerned, the Consent Decree places the burden squarely upon *the City* to prove that the claimant was objectively ineligible for hire at the time she failed the PAT. In this regard, the terms of the Consent Decree are consistent with controlling Title VII case

law.  See Intern'l Brotherhood of Teamsters v. United States, 431 U.S. 324, 359 & 361-62 (1977) (upon proof that the employer has engaged in a pattern or practice of discrimination, class members are presumptively entitled to relief and the plaintiff need not prove their qualification).

Indeed, it is the impracticability of determining with certainty which claimants would have been hired which justified the parties' use of the shortfall method of calculating damages in the first place.  As we noted at the June 15, 2006 fairness hearing:

> it is impossible to determine with any certain[ty] which claimants would have been hired but for the City's use of the PAT.  This is due both to the passage of time (in some cases up to 10 years) since the discrimination occurred and also to the fact that those who failed the PAT were not permitted to proceed further in the application process.
>
> ***
>
> Nevertheless, the impossibility of pinpointing which claimants would have been hired in the absence of the PAT does not defeat the United States' claim for damages.  Instead courts have held that, where discrimination has been established but it is not possible to determine with reasonable certainty which claimants would have been hired absent the unlawful practice [it] is appropriate to use a "shortfall" method to calculate monetary relief.

(Tr. of 6/15/06 Hrg., at 41-42.)  In this case, the parties reached a negotiated compromise that a shortfall of five (5) hiring positions was appropriate and the amount of the Settlement Fund was computed accordingly, the $170,000 fund representing an average of $34,000 in backpay (less mitigation) for each of the five shortfall positions.  This Court determined that dividing the $170,000 Settlement Fund among all eligible claimants was appropriate in light of the difficulties inherent in attempting to prove which claimants would have been hired in the absence of the PAT.  (Tr. of 6/15/06 Hrg., at 49-50.)

As the United States points out, the City was duly represented at the June 15, 2006 hearing and made no objections to the Court's comments in connection with its entry of the Consent Decree.  Thus, the "context" in which the Decree was entered also

4

flatly contradicts the City's position that the United States must prove, as to any given relief determination, that the relevant claimant would have been hired by the City absent the PAT. See State of New Jersey, 194 F.3d at 431-32 (the court's opinion approving the consent decree after a fairness hearing and the fact that neither party objected to the court's comments constitute part of the "context" of the decree which inform its meaning). The City's attempt to impose the aforementioned burden of proof on the United States is an attempt to rewrite the terms of the Consent Decree which we will not permit.

II.

With respect to the award of monetary relief, the United States has asserted that 45 claimants are eligible to share in the Settlement Fund. (See Pl.'s Corrected Relief Awards List [Doc. # 171, Attachment 2].) The City has objected to every one of these proposed awards, insisting that none of the individual claimants can demonstrate that they would have been hired by the City in the absence of the PAT. (See Def.'s Detailed Obj. to Relief Awards List [Doc. # 167] at p. 5.) Further, the City maintains that, as for any claimant found to be ineligible for monetary relief following the November 20 fairness hearing, the portion of the $170,000 Settlement Fund allocated to that claimant must revert to the City. In essence, the City seeks to reacquire the entirety of the $170,000 Settlement Fund which it agreed to create as a compromise resolution of the damages phase of this case.

Here again, we find that the City's interpretation of the Consent Decree is belied by the document's express terms as well as the circumstances surrounding its formation. Paragraphs 20, 25, 58 and 59 collectively provide that the Settlement Fund shall be the sum of $170,000.00, which the City shall pay out in four annual distributions at the direction of the United States. (Consent Decree ¶¶ 20, 25, 58, 59.) Paragraph 55 states that, to the extent this Court sustains an objection to the United States' relief determination, the Court "shall amend [the Relief Awards List] to adjust the

amount and nature of the relief to be awarded to the Claimants consistent with such finding, *while maintaining, to the extent possible, the proportionate shares of the Settlement Fund awarded to all other Claimants.*"  (Id. at ¶ 55 (emphasis added).)

The City contends that nothing in ¶ 55 compels the Court to redistribute the monetary awards of disallowed claimants among the remaining ones.  We disagree and find, on the contrary, that the language unambiguously supports the parties' intent to have such funds proportionately redistributed among the remaining eligible claimants.  The City also points to ¶ 64 – which provides that funds remaining in the account sixty days after the final distribution shall be returned to the City – as "recognizing the principle" that part of the Fund can revert to the City.  This language, allowing unclaimed or undeliverable funds to revert to the City's coffers, in no way supports the City's proposed interpretation of ¶ 55.

In fact, the City's proposal that it recapture settlement funds in the case of any successful objection to a monetary award would defeat the purpose of the parties' shortfall damages calculation.  As we observed at the June 15, 2006 fairness hearing, the whole point of the $170,000 settlement figure is to fund the five job positions which, the parties agreed, were presumably lost to female applicants because of the PAT. (See Tr. of 6/15/06 Hrg., pp. 48-49.)  This Court explained why it is appropriate to award the class of eligible claimants a "pro-rata" share of this fund:

> If it were theoretically possible to determine with certainty whether a particular applicant[] who failed the PAT would have passed all the other steps in the City's selection process and been hired, then only those applicants who would have actually been hired would be eligible for monetary relief[.]  [A]s we've previously observed, however, it is impossible in retrospect to make such a determination because of the fact that the City did not allow individuals who failed the PAT to continue on in the selection process.  Under the circumstances, then, it is appropriate to allow all eligible claimants to have a "pro rata" share in the monetary award even though each claimants' [sic] award may wind up being substantially less than the full value of the police officer job she might have obtained in the absence of the PAT.  Courts have recognized that, in circumstances such as these, that a "pro rata" approach is "the best that can be done" for the claimants. ...

6

(Tr. at pp. 49-50.)  Considering the context in which the Consent Decree was approved and entered, see State of New Jersey, *supra*, at 431-32, it is clear that the Decree contemplates the redistribution of a disallowed monetary award among the remaining eligible claimants.

The City argues that, if the portions of the fund allocated to ineligible claimants do not revert to the City, then there would be no point in allowing the City to raise objections to the Plaintiff's monetary relief determinations.  This statement, while true, proves the Court's point because the Consent Decree, in fact, does *not* permit the City to raise objections relative to the monetary awards.  That right is reserved to aggrieved claimants only.

Specifically, the Decree contemplates that, subsequent to the United States' published notice of its relief determinations, aggrieved claimants may register their objections consistent with the procedures laid out in ¶ 52.  Thus, claimants have a general right to object and are not limited in the type of relief determination that they may challenge.  In contrast, to the extent the City retains the right to object to the United States' relief determinations, the Consent Decree contemplates that this right is limited to objections relating only to priority hires:

> *If the City disagrees with the United States' determination that a Claimant is eligible for consideration for Priority Hire, ... the City shall file with the Court an objection* stating all grounds for the City's contention that the Claimant is not eligible for such relief and identifying all documents relating to the City's contention and all witnesses with knowledge of facts supporting the City's contention.  On the same date, the City shall serve a copy of the objection on the United States along with a copy of all documents relating to the City's contention that the Claimant is not eligible for hiring relief. ...

(Consent Decree ¶ 54 (emphasis added).)  In passing upon the merits of an objection to a priority hire award, the Consent Decree provides that the Court "shall find that any objection, *including any objection made by the City*, regarding a Claimant's eligibility for consideration for Priority Hire is well-founded only if the objector(s) prove by a

preponderance of the evidence that, at the time she failed the PAT, the Claimant was not qualified for the position of entry-level police officer in the City's Bureau of Police..." (Id. at ¶ 55 (emphasis added).)  Thus, the City's right to object is referenced only in the context of priority hires.  No provisions of the Consent Decree expressly or impliedly give the City standing to object to the United States' monetary relief determinations.  This interpretation makes sense in light of our previous conclusion that the Consent Decree unambiguously contemplates the redistribution of settlement funds among eligible claimants in the event an objection to a monetary relief award is sustained:  the City has no right to object to a particular monetary relief determination because, except with respect to ¶ 64 of the Consent Decree (relating to unclaimed or undeliverable monetary awards) the City is not entitled to recapture any portion of the Settlement Fund.

In arguing that portions of the Settlement Fund must revert to its coffers, it again appears that the City is trying to re-write the terms of the Consent Decree which it negotiated at arms-lengths and voluntarily entered into.  Accordingly, the City's argument is not well-taken.

III.

The City asserts that the written civil service exam "has always been the primary, non-discriminatory, rank-ordered selection device for Erie police hiring."  (Def.'s Mot. to Compel [Doc. # 164] at p. 3, ¶ 8.)  Thus, the City posits that, with regard to any claimant who failed the written Civil Service exam administered in 2002, such claimant is automatically precluded from obtaining any relief, even for prior years in which she took and failed the PAT.  Further, the City requests that this Court compel the United States to produce information – including written questionnaires and notes of interviews generated as part of the Plaintiff's relief determination process – which the City believes will enable it to evaluate each claimant's aptitude and likely success relative to the written civil service exam.  The City submits that it would like to discover, e.g.,

> [w]hich, if any, of these applicants has studied criminal justice, worked in law enforcement or a related field, taken other civil service tests for public safety jobs, scored well on the SAT's or other standardized tests, or otherwise demonstrates a true basis to extrapolate or assume that she would likely have scored sufficiently well on the Erie civil service test in the year she failed the PAT to have been hired?

(Br. in Supp. of Def.'s Mot. to Compel [Doc. # 165] at p. 13.)

There are several problems with the City's motion to compel. First, to the extent the City seeks to challenge the United States' monetary relief determinations, it is restricted from doing so for the reasons we previously discussed.

Second, the information which the City seeks to obtain is not called for under the Consent Decree. We agree with the Plaintiff that the Consent Decree's discovery provisions are "part and parcel of the parties' settlement." (Pl.'s Mem. in Resp. to Def.'s Mot. to Compel [Doc. # 168] at p. 22.) Thus, to the extent the City seeks to invoke Fed.R.Civ.P. 37 in support of its motion to compel, it is the terms of the Consent Decree, rather than the Federal Rules of Civil Procedure, that define the extent of the parties' discovery obligations at this juncture. See Fed.R.Civ.P. 29 (parties are permitted to modify discovery limits or procedures through stipulation).[1] As the United States observes, the only discovery which the Consent Decree required to be provided to the City were the Plaintiff's Relief Awards List and the claimants' Interest in Relief forms. The United States has already turned these documents over to the City. Moreover, in a letter dated September 20, 2006, the United States provided additional information to the City explaining the criteria it considered in determining claimants' eligibility for relief – principally, the claimant's criminal history, driving record, and (in the case of 2002 applicants) performance on the written civil service exam. In sum, it

---

[1] In any event, the City never served any interrogatories, requests for production of documents, or other discovery allowed under the Federal Rules.

9

appears the United States has complied with its obligations under the terms of the Consent Decree, and the City does not point to any provision of the Decree that would require the United States to do more.

Third – and most importantly – it appears that the United States is not in possession of the information which the City seeks to obtain. The United States represents that the claimant questionnaires, for example, contain no information about past education, SAT or other standardized test scores, or other background information (other than the criminal history and driving record information already provided to the City) that would bear on the claimant's likely performance on the civil service exam.[2]

We conclude that the City has not demonstrated grounds warranting an order compelling disclosure of the information sought in the City's motion to compel. Accordingly, for all the reasons previously set forth,

IT IS HEREBY ORDERED, this 17th day of November, 2006, that the Defendant's Motion to Compel Production of Documents Regarding Proposed Relief Awards [Doc. # 164] is DENIED.

                                                    s/     Sean J. McLaughlin
                                                         United States District Judge

cm:     All counsel of record.

---

[2] To the extent the City contends that any claimant who failed the written civil service exam in 2002 is automatically ineligible for relief even with regard to a prior year in which the claimant failed the PAT (and was precluded from taking the civil service exam), this argument is in the nature of an objection which the Court will address more fully in connection with the November 20, 2006 fairness hearing.